[Civ. No. 11058.   Second Appellate District, Division One.—November 21, 1936.]

RUTH WILKERSON, Respondent, v. CITY OF EL MONTE (an Incorporated Municipality), Appellant.

William P. Haughton, City Attorney, and De Forest Home for Appellant.

Eldred E. Wolford and Irving E. Read for Respondent.

SHINN, J., *pro tem.*—In this action against the City of El Monte, a municipal corporation, plaintiff was awarded damages by verdict for injuries sustained while riding as a passenger in an automobile across a street intersection constructed and maintained by defendant municipality in an allegedly defective and dangerous condition. From the judgment entered upon the verdict the city appeals.

Where Nevada Street crosses Amador Street in said city two depressions exist across Nevada Street, being extensions of the gutters of Amador Street across Nevada. The liability of the city depends upon the condition of these depressions. If, as constructed and maintained by the city, they created a defective or dangerous condition within the meaning of the Statutes of 1923, page 675 (Deering's Gen. Laws, Act 5619), which statute is the source of liability of municipalities in such cases, there existed a liability of defendant city in favor of those persons who, in using the street in a care-

ful manner, sustained injury by reason of such condition of the street. If the condition was not defective or dangerous the city was under no liability. It was sufficiently shown that defendant city had knowledge of the condition of the intersection.

It is unnecessary to describe in detail the nature of the depressions further than to say that they were such dips as are not uncommonly used for drainage across intersections, sloping gradually from each side to the bottom of the dip, and to a depth of from six to nine inches. The maximum depth of the dips was in the middle or along the crown of Nevada Street and in each direction from the crown they gradually flattened away.

Plaintiff, while riding as a passenger in an automobile bound northward on Nevada was forcibly thrown from her seat and severely injured when the car struck the dips. Neither she nor the driver of the car was familiar with the intersection. The speed of the car was shown to have been about twenty miles per hour.

Although there was no dispute in the evidence as to the nature of the depressions, the evidence from which the jury was required to determine whether the roadway at the intersection was safe or dangerous for travelers was such as to furnish support for opposing conclusions. Plaintiff relied largely upon evidence that accidents of a similar nature to that of plaintiff had been of frequent occurrence. The city relied upon evidence that the contours of the intersecting streets conformed to customary standards of design and construction for the disposal of surface waters on streets and it relied also upon evidence of motorists who had made frequent use of the streets in question and who testified that the intersection could be traversed safely at ordinary speed. On behalf of plaintiff, persons living in the neighborhood testified to their observations over a period of years of mishaps to passing automobiles occasioned by their striking the depressions in question. In some cases where the cars had been actually seen by the witnesses as they crossed the intersection, testimony was given as to the approximate speeds of the cars, which were not high speeds, and as to the action of the cars when they struck the depression. This testimony was properly admitted. ■ But in other cases witnesses were allowed to testify to casualties of various sorts

around the intersection upon the mere supposition and without connecting evidence that they resulted from the construction of the streets at the intersection and without evidence as to the conditions under which the casualties occurred. This evidence was erroneously admitted over objection.

In cases of accident due to the alleged dangerous condition of premises it is proper to receive evidence of earlier accidents occurring at the same place. It tends in some degree to prove the condition to have been a dangerous one and that the accident in question may have resulted from such condition. It may also tend to prove that the one charged with the duty of maintaining the premises knew or should have known of the condition. (*Long* v. *John Breuner Co.*, 36 Cal. App. 630 [172 Pac. 1132].) But evidence along this line should not be received without some safeguards. It should be shown that the physical condition of the premises was substantially the same at the time of each accident. That fact was not disputed in the present case. And where other factors enter into the case, such as the conduct of the persons injured in the use of the premises, evidence of the results of other accidents is of no value unless a showing is made as to the circumstances and conditions under which the several accidents occurred. In the present case the speed at which automobiles crossed the intersection was an important factor. A depression which would be safe to cross at slow speed might be exceedingly dangerous to cross at high speed. The safety of the crossing in question was to be judged by the consequences of travel across it at ordinary and reasonable speed and in the exercise of ordinary care.

One of plaintiff's witnesses said: "Well, cars going across there, drive across there, they all bounce up in the air and make a terrible noise." This evidence was allowed to stand against an objection and a motion to strike. The witness had previously testified: "Well, they all drive very fast across that corner." This statement was stricken out on motion of defendant's counsel who cannot now question the ruling. But if the cars which suffered accidents were those which drove "very fast" across the corner, that fact should have been placed before the jury as otherwise the jury may have concluded that the intersection was unsafe for cars traveling at reasonable speeds. This witness testified that milk bottles fell from a truck as it crossed the depressions but she

did not see the truck before nor at the time it crossed the intersection. The same witness related an occurrence when tools fell from a plumber's truck. She did not know whether the truck traveled near the center of the street where the depression was more pronounced or near the curb nor did she testify as to the speed of the truck nor as to its actions upon striking the depressions. She also testified as follows: ''Well, many cars take a bump when they hit those streets there, and they go up in the back and people seem to go to the top of the car, and I don't know whether they are hurt or not, but I know that they go to the top of the car.'' Q. ''You have heard them as they went by?'' A. ''I have.'' Yet it appears from her testimony that she had actually seen but one of the vehicles (the plumber's truck) crossing the intersection.

Another witness residing near the crossing testified to an occurrence some two years before when a car driven by a woman stopped in front of his house where she put two children ''in the back seat again''. This witness stated that both the children were injured in the bouncing of the car. He testified to another instance where a car stopped in front of his house, saying, ''I noticed one case where two ladies . were sitting in the rear seat and a man was driving and they stopped there because they had been thrown into the bottom of the car and they were both quite badly injured by the bumping of the car.''

In the first instance the witness did not see the car until just as it came to a stop 150 feet away from the intersection although he heard a noise. He concluded that the other car had been severely bumped in crossing the intersection from the fact that the women ''were fixing their hats and gathering themselves together and adjusting things about themselves when I saw them''.

Another witness testified to having seen some children in a car which had stopped in front of her house. The children were climbing on to the rear seat of the car and were crying, from which she concluded that they had been injured in crossing the intersection. This witness did not see the car cross the intersection. She testified also to an occasion when some candy fell from a truck crossing the intersection and some milk bottles fell from another truck, the doors of which were open. Yet another witness testified to an occasion when a

car containing four persons—two men and two women— stopped in front of her driveway some 250 feet south of the intersection; the rear window of the car was broken, there was glass in the back seat and in the hair of the women. This witness did not see the car before it came to a stop. She also saw another car cross the intersection and saw it bounce. She did not testify as to the speed of any of these vehicles. Yet another witness testified to having seen a woman being lifted from the rear seat of the car at a point a short distance south of the intersection. It did not appear that he saw the car cross the intersection or that he knew anything as to the speed at which it traveled. Other testimony was given of a general nature, consisting of conclusions of witnesses drawn from noises that they heard, that cars were bumped in crossing the intersection. All of this evidence was received apparently under the theory that the tendency was to prove that the condition of the intersection was a dangerous one. But as we have pointed out, the speed of the cars was a factor that could not be disregarded if the evidence was to have any value. The mere fact that some automobiles bounced in crossing the depressions did not show that the condition of the intersection was either dangerous or defective although if it had been shown that they bounced in crossing at reasonable and ordinary speed the evidence would have had a very considerable value. This vital element of the evidence was entirely lacking in the testimony which we have summarized. Where the evidence tends to show only that accidents happened occasionally without any showing as to the conditions under which they happened there is a wide departure from the theories under which evidence of other accidents is admissible. The court, in determining whether a given condition of a street is safe or unsafe, cannot entertain a general inquiry into the results of the use of the street by all persons who use it. The question is not whether accidents do or do not occur; it is whether they occur under given conditions and the all-important condition in the present case was whether such accidents occurred when cars crossed the intersection at usual and reasonable speeds. We do not hold that evidence of other accidents would have been inadmissible if the conditions of such accidents had been different from those surrounding plaintiff's accident. It may be that it would have

been proper to receive evidence of accidents to cars which had crossed the intersection at high speed, for such evidence would have tended in some degree to prove the speed at which the crossing was dangerous, but it was improper, and we think strongly prejudicial to the case of defendant, to receive evidence of the results of prior accidents without evidence as to the cause of such accidents. Evidence as to the results of accidents might easily have created false impressions in the minds of the jurors for the accidents might have been due to the negligence of the drivers of the cars and not to the condition of the intersection.

Plaintiff's witness, Finley, a surveyor and engineer, made a replica of the intersection which was used in evidence. The witness was asked this question by plaintiff's counsel: "Mr. Finley, have you an opinion as to whether or not the condition as it now exists at the intersection of Amador and Nevada Street is a dangerous one?" The question was objected to upon several grounds, among them being that it called for an opinion which would not be proper as expert testimony. The objection was overruled and the witness replied that the condition was dangerous. The witness was asked whether in his opinion the condition of the crossing was a defective condition and over objection he testified that it was a dangerous condition for travel at a speed greater than eighteen or twenty miles per hour. Another witness for plaintiff, Charles Broughton, a contractor of highway construction, who had made certain tests and observations of travel over the intersection, was asked to state his opinion "regarding the method of construction of that intersection" and over objection answered "it is constructed wrong". He was asked the further question whether in his opinion the intersection was constructed in a manner that was safe for motor vehicle travel on Nevada across Amador at a reasonable rate of speed and answered over objection, "The construction is wrong and not safe for travel." The objections should have been sustained. The opinions went to the ultimate question of fact to be determined by the jury. The condition of the street had been fully described. The widest latitude had been offered plaintiff to prove what happened to automobiles when they crossed the intersection. There was no need for opinion evidence on the subject and the opinions given by the witnesses Fin-

ley and Broughton clearly were invasions of the province of the jury. It is not proper to receive opinion evidence upon the ultimate question of fact which is to be determined by the court or a jury. In *Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 48 [27 Pac. 590], the witness had been allowed to testify that a coupling pin used in the drawhead of a street car was unsafe. In holding the evidence to have been erroneously admitted the court said: "When the inquiry relates to a subject whose nature is not such as to require any .peculiar habits or study in order to qualify one to understand it, or when all the facts upon which the opinion is founded can be ascertained and made intelligible to the court or jury, the opinion of the witness is not to be received in evidence."

If the relation between the facts and their probable results can be determined without any special skill or training, the facts themselves must be given in evidence and the conclusions or inferences must be drawn by the jury. In *Parkin* v. *Grayson-Owen Co.*, 157 Cal. 41 [106 Pac. 210], a witness had been allowed to testify that the method by which a horse had been hitched to a hitching post was not "a proper and safe one for the tying of horses". Under an ordinance involved in that case it was required that the animal should be "properly secured, either by hitching or being under the personal control of some person of suitable age". The court said: "In effect, therefore, the question was equivalent to asking the witness whether in his opinion negligence was imputable to the driver, and hence to his employer . . . and it was an invasion of the jury's province to seek to substitute the opinion of a witness as to defendant's conduct for that of the jurors themselves who were capable and charged with the duty of observing and determining the relation between the facts and the consequences resulting therefrom." In *Shafter* v. *Evans*, 53 Cal. 32; *Kauffman* v. *Maier*, 94 Cal. 269 [29 Pac. 481, 18 L. R. A. 124]; *Limberg* v. *Glenwood Lumber Co.*, 127 Cal. 598 [60 Pac. 176, 49 L. R. A. 33], it was held improper to receive opinion evidence as to whether one condition was more safe or more dangerous than another. In *People* v. *O'Brien*, 122 Cal. App. 147 [9 Pac. (2d) 902], the court sustained a ruling which barred opinion evidence that defendant could or could not distinguish right

from wrong. After reviewing the authorities, the court said: "Not only by the courts of this state, but as well by courts of other jurisdictions, wherein the rule obtains by which testimony of the nature of that here under consideration is denied admission, the universal reason assigned therefor is that such evidence trenches upon the province of the jury in that it permits a witness to decide the very question upon which the jury alone is qualified to pass judgment."

We are of the opinion that expert testimony could not have been properly received to prove that the intersection in question was either dangerous or defective within the meaning of the statute.

We do not doubt that the rulings of the court which we have discussed resulted in prejudice to defendant's case. A great deal of evidence was received bearing directly upon the question of safety with which automobiles could cross the intersection. Had the jury found that the intersection was a safe one, such finding would have found substantial support in the evidence. The issue was closely balanced and that fact necessarily magnifies the importance of the evidence erroneously admitted which contributed to shifting the balance in plaintiff's favor. The evidence which was given in plaintiff's behalf concerning other accidents occurring at earlier dates was potent to persuade the jury that a condition existed which should have been remedied by the city, and we cannot say that there was not enough of this class of evidence erroneously admitted, to furnish the weight to plaintiff's evidence which decided the issue in her favor. When there was added to such evidence the opinion of expert witnesses that the crossing was dangerous on account of the manner of its construction, the conclusion seems irresistible that the issue could not have been fairly decided by the jury. The result might easily have been different had the objectionable testimony been excluded. Upon a review of all of the evidence we cannot avoid the conclusion that plaintiff received such an advantage in having the benefit of the evidence which we hold to have been improperly admitted that to sustain the judgment in her favor without a fair trial of the issue of defendant's liability would result in a miscarriage of justice.

■ There is another point upon which we should give a ruling. The jury was instructed upon the general doctrines of negligence and contributory negligence. One of the instructions read in part as follows: "If you find from a preponderance of the evidence that the defendant was negligent in any manner proximately contributing to the happening of the accident and that there was no negligence on the part of the plaintiff, Ruth Wilkerson, contributing proximately thereto, then in so far as this question is concerned your verdict shall be in favor of the plaintiff and against the defendant. If you find from a preponderance of the evidence that the defendant was negligent and its negligence was the sole cause of the accident, then you will have no occasion to consider the question as to whether or not there was any contributory negligence on the part of the plaintiff. Your verdict in such case shall be in favor of the plaintiff and against the defendant."

Other instructions stated that defendant was not liable if the speed of the car in which plaintiff rode was the sole proximate cause of the accident but that it could not be considered the sole cause if "some negligence however slight on the part of the City of El Monte" contributed proximately to the cause of the accident.

The liability of the city was predicated first upon proof of the dangerous or defective condition of the intersection. That fact having been established there must have been shown a failure of the city to take action reasonably necessary to protect the public against such dangerous or defective condition within a reasonable time after receiving knowledge or notice of the same. The charges against defendant city were specific. They stood or fell with the proof of the particular acts of commission and omission charged in the complaint. No other acts could have been pertinent to the question of liability. The instructions on the general doctrines of negligence tended to obscure the issue and to confuse the jury and it was error to give them. (*Pittam* v. *City of Riverside*, 128 Cal. App. 57 [16 Pac. (2d) 765].)

It is unnecessary to decide whether the error committed in giving these instructions, standing alone, would require a reversal of the judgment. In order to decide that question we would have to consider all of the instructions given, some of which correctly stated the law, and this would serve no

good purpose since the other errors discussed require a reversal.

The judgment is reversed.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 14, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 18, 1937.