### DE LAPE v. LIGGETT & MYERS TOBACCO CO.
#### No. 7554–M.

District Court, S. D. California, Central Division.

Jan. 17, 1939.

Austin E. Longcroft and Fred Mansur, both of Los Angeles, Cal., for plaintiff.

Frank P. Doherty and William R. Gallagher, both of Los Angeles, Cal., for defendant.

McCORMICK, District Judge.

In this action for damages for personal injuries caused by the smoking of a defectively fabricated cigarette, the primary issue of liability of the manufacturer is dependent upon the law of the State of California. The case is here solely because of the diversity of citizenship status of the parties. It was commenced by the plaintiff, a citizen and resident of California, in the state court, and was removed here by the defendant, a New Jersey corporation (28 U.S.C.A. § 71). There is no federal question involved. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

The evidence and stipulations establish that on April 9, 1935, during a business conversation between plaintiff, a large man of rugged physique, approaching 69 years of age, and two younger men, one of the latter produced a new and unopened tightly cellophane wrapped and sealed package of cigarettes, of defendant's manufacture. The package of cigarettes had been one of a carton of like brand which the man possessing it, Stone by name, had purchased factory intact from a dealer in the ordinary channels of trade. After opening the new package, Stone took a cigarette out of it and handed the package to the plaintiff, who also took from it a cigarette which he placed normally in his mouth for smoking. Stone struck a match and first lighted his own cigarette and then applied the lighted match to the exposed end of plaintiff's cigarette. Upon drawing on the cigarette, "tiny sparks and blue or greenish blue flame came right out of the end of the cigarette and ran up the man's (plaintiff's) nostrils." There was no detonation, but its action was

like that of a "whizzer" firecracker. "It was a flash." The plaintiff hurriedly took the cigarette out of his mouth, but before he was able to lay it down it flared up again more extensively than at first, and caused further burns on plaintiff's face. It continued to burn, but later, contrary to the usual action of lighted cigarettes of the same brand, "it went out of its own accord without any snuffing." When later examined, the wrapper appeared to be "scorched" and "the tobacco, which was partially consumed, seemed to be more or less charred all the way through the cigarette, from the lighted end to the mouth end." The burns received by the plaintiff, when examined by his physician two days after the accident, appeared to be of minor degree and confined to the left side of his nose, upper lip, and "a little singeing of the eyelashes" and moustache. He also developed over his face and forehead a skin affection described by the doctors as herpes zoster ophthalmicus. This condition readily responded to treatment. He was very much excited over the occurrence, and undoubtedly has suffered some nervous shock as the result of the accident. This, while it has not greatly impaired health, for a man of his advanced age, has to some extent interfered with his normal activities. We do not believe that he has been seriously or permanently injured as the result of this accident with the cigarette.

■ It seems obvious that the foreign and injuriously inflammable material in the cigarette which directly caused the injury to the plaintiff was in the cigarette when it left the factory of the defendant. Under no other reasonable view of the entire record can the presence of the damaging matter be explained. There is no evidence whatever and no circumstances in proof which would warrant an inference that the material which burst out in flame from the end of the cigarette was not present in the cigarette when it was taken from the freshly opened package. It has been suggested that the sulphuric material on the match may have caused the "flash flame" action which caused the injury to the plaintiff. To so find would be mere conjecture. The type of match used is not described in the record, and no one has testified to facts or circumstances from which an inference can be drawn that the burns sustained by the plaintiff were directly caused by the match. We find the proximate cause of the burns and injury to have been the presence in and ignition of deleterious material in the cigarette itself. There is no evidence whatever of any contributory negligence.

■ Such being the case, the ultimate question of liability is, has the defendant negatived negligence in the manufacture of the cigarette which injured plaintiff? We find, under the record before the court, that it has not.

All that the defendant has done to offset the effect of the evidence establishing the defectively manufactured cigarette is to show the general process of fabricating the brand of cigarette involved, from the receipt of the tobacco at the factories of defendant company until shipment of the finished product therefrom to distributors or dealers. The ingredients used and the various steps in manufacture are described generally, and it is stated that the modus operandi is uniform. There is no proof of the fabrication of the particular package from which the defective cigarette was taken or of the dangerous cigarette itself. It is true that the plaintiff has produced neither the package nor the defective cigarette, although it appears that what remains of the cigarette is still in the possession of an attorney for the plaintiff. It is only by inference that we can find that the duty of careful inspection of the defective cigarette imposed by law upon the defendant was performed, and when we compare the uncontradicted, positive testimony of the three credible deponents who were present at the time of the accident with such an inference, we are impelled to conclude that the defendant negligently made the cigarette which burned the plaintiff.

In the early days of marketing, and particularly before the era of mass production and widely publicized merchandising methods, it was settled law that a manufacturer of a defective article was not liable to a third person with whom he had no contract. Winterbottom v. Wright, 1842, 10 M. & W. 109. The harshness of this rule was minimized in Thomas v. Winchester, 1852, 6 N.Y. 397, 57 Am.Dec. 455, where a manufacturer of drugs who had defectively labeled them was held liable for personal injuries to one who had purchased from a middleman. This decision and other similar rulings led to the invention of the "dangerous instrumentality" doctrine. The evolution of this doctrine in the law of torts and its extension by judicial pronouncements of the Supreme Court of California is stated in Dahms v. General Ele-

vator Co., 1932, 214 Cal. 733, 7 P.2d 1013. We think that the clear intent of this latest applicable ruling by the "highest court" of the state is to follow the doctrine announced by Judge Cardozo in the leading case of MacPherson v. Buick Motor Car Co., 217 N.Y. 382, at page 390, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440, where the court said [page 1053]: "We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law."

■■■ In line with this modern declaration of a manufacturer's liability to persons other than his immediate vendees, the restaters of the law of torts have adopted the "reasonable man" test of foreseeability, which permits the standard of care on the part of a manufacturer to vary with the character of harm that is likely to result. Restatement Torts, 1934, Section 395, comment d. The manufacturer of a cigarette which is made dangerous by reason of its defective construction is liable in damages to a smoker who is injured by it in the ordinary consumption of the cigarette, notwithstanding that a cigarette is not an inherently dangerous instrumentality. The liability is not that of an insurer, but the care that is to be exercised and the duty that is to be discharged are correlative to the likelihood of harm that results from lack of constant vigilance in fabricating articles for human consumption. We direct attention to two very illuminating articles on the present-day aspect of manufacturer's liability in tort which appear in 24 Virginia Law Review, December, 1937, 134, and 37 Michigan Law Review, November, 1938, 1, where many helpful decisions are collated by the respective authors.

■■■ While the doctrine of res ipsa locquitor is probably sufficient under the facts as we have found them to impose liability upon the defendant manufacturer of the defective cigarette, as appears to have been the situation in Liggett & Myers Tobacco Co. v. Rankin, 1932, 246 Ky. 65, 54 S.W.2d 612, we think that the Civil Code of the State of California itself declares rules of law which make the defendant manufacturer liable to the plaintiff in this action.

Section 1708 of that Code is as follows: "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights." And Section 1714 reads: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the title on compensatory relief." And Section 3281, under the title "Compensatory Relief," establishes the right to damages for personal injuries in tort actions such as the one before this court, as follows: "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

It thus appears to us that in California the duty to use ordinary care in fabricating products that are made for the purpose of being used in contact with the human mouth, such as tobacco or cigarettes, extends to everyone, without regard to contract, and a failure to perform such duty which proximately causes injury to another normally using such products constitutes negligence by the manufacturer, for which the injured party, in the absence of his contributory negligence, may recover compensatory damages. This is undoubtedly the correct and applicable rule under the Civil Code of the State of California. Compare Dahms v. General Elevator Co., supra.

Passing to the question of damages, the issue requires merely brief mention.

■■■ The plaintiff is described as being "just as rugged" as at about the time of the accident. He is now past 72 years of age, and the weight of the evidence shows that he is in good physical and mental condition for a man of his years. His experience undoubtedly has caused him some excitement and nervousness, but inasmuch as the burns which he sustained from the defective cigarette were minor and the injuries therefrom under all the circumstances temporary, an award of $2,000 for such seems fair and reasonable. The doctor bills incurred and medical care and attention already received or paid amount to $250, pursuant to stipulation of the parties. We think the evidence as to any further

damage is too speculative and uncertain to warrant any additional award.

Accordingly, findings of fact, conclusions of law and judgment will be for plaintiff and against defendant for $2,250 and costs of suit. Attorneys for the plaintiff will prepare same under the rules and pursuant to this memorandum.