[S. F. No. 17765.   In Bank.   Dec. 28, 1948.]

DORIS HALE, a Minor, etc., Appellant, v. LOUIS DEPAOLI, Respondent.

Elmer P. Delany and Wm. A. Sullivan for Appellant.

Bronson, Bronson & McKinnon for Respondent.

EDMONDS, J.—Louis Depaoli was the owner of real property which he leased to the mother of Doris Hale, a minor. The railing on the back porch of the house collapsed when the girl, then 18 years of age, leaned against it, and she received serious injuries as the result of her fall to the concrete walk some 10 feet below. The appeal is from a judgment which followed an order granting a nonsuit.

The first count of the amended complaint charged Depaoli with liability for the accident by reason of negligence in the construction of the railing. A second count alleged that as lessor he had fraudulently concealed a known defect on the premises.

The evidence offered in support of these allegations, stated most favorably to the appellant, shows that the house was constructed in 1925 by Depaoli and L. Ferreiros, as partners. In their building activities, Ferreiros supervised the building operations and Depaoli handled the sales. The railing which gave way was built with finishing nails and one witness stated that he did not think it had been "properly nailed in the first place." He testified that from another portion of the railing he took out one 6-penny and one 8-penny finishing nail. In his opinion, the railing had not been toenailed correctly; proper construction, he said, required four 8-penny finishing nails at each corner. It also appears that if the railing was improperly constructed the defect was a latent one because the nail heads were concealed by putty and paint.

The property was sold in 1926. Depaoli acquired it in 1937 by purchase from the then owner. Before that time, Ferreiros died.

According to Depaoli's testimony, although he did not superintend the building operations, he made an inspection of the house in 1926 when it was sold. He made another inspection of the property at the time of the conveyance to him. At neither time did he observe any defect in the construction of the railing which was the cause of the accident, and he gave the lessee no warning of any hidden defect.

Upon this evidence the trial court granted a motion for nonsuit. The appellant contends, as a ground for reversal of the judgment subsequently entered, that a building contractor is liable to a third person for negligence if the work performed results in a defective condition which makes the use of the building imminently dangerous. As justifying recovery upon the second cause of action, it is argued that a lessor is liable for a latent defect in the premises, known to him and unknown to the lessee, if he allows the lessee to occupy the building in ignorance of the risk.

Each cause of action pleaded in the complaint charges Depaoli with liability for damages in a separate and distinct capacity. The first count rests upon his asserted liability as a contractor for defects in the erection of the house. The basis of the second count is the liability of a lessor of real property for failure to warn the lessee of known defects in the premises. The rules of law applicable to these relationships are quite different.

Generally speaking, after a contractor has completed a building and it is accepted by the owner, "he is not liable to a third person for damages suffered by reason of the condition of the work even though he was negligent in carrying out the contract" (*Johnston* v. *Long,* 56 Cal.App.2d 834, 837 [133 P.2d 409]). His position is substantially that of a manufacturer around whom "the common law, as a general rule, throws a strong arm of protection . . ., warding off claims of third persons, not direct purchasers, for personal injuries sustained from use of articles so manufactured and sold by him." (*Kalash* v. *Los Angeles Ladder Co.,* 1 Cal.2d 229, 231 [34 P.2d 481].) However, a clear exception to this rule is made where the article causing injury is of an abnormally dangerous or noxious nature. (*Dahms* v. *General Elevator Co.,* 214 Cal. 733 [7 P.2d 1013] ; see, also, *Rae* v. *California Equipment Co.,* 12 Cal.2d 563 [86 P.2d 352]; *Johnston* v. *Long, supra.*) The Kalash case recognized a further exception by quoting with approval the statement of Justice Cordozo in *MacPherson* v. *Buick Motor Co.,* 217 N.Y. 382

[111 N.E. 1050, Ann.Cas. 1916 C 440, L.R.A. 1916 F 696] : "If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger." (*Kalash* v. *Los Angeles Ladder Co., supra,* p. 231; see also, *Sheward* v. *Virtue,* 20 Cal.2d 410 [126 P.2d 345]; *DeLape* v. *Liggett & Myers Tobacco Co.,* 25 F. Supp. 1006 [N.D. Cal.], affirmed, 109 F.2d 598.)

The purpose of the railing was to prevent one using the porch from stepping or falling from it. A structural defect in this protection would be "reasonably certain to place life and limb in peril," and there was evidence from which a jury might infer that the railing was not erected in accordance with sound building practice. Under these circumstances, the question for decision is whether or not the injured child is entitled to the benefit of the exception to the general rule of nonliability of a contractor.

Depaoli relies upon the statement in *Johnston* v. *Long, supra,* page 837, that "the contractor is liable if the work done and turned over by him is so negligently defective as to be imminently dangerous to third persons, provided the contractor knows, or should know, of the dangerous situation created by him." According to this language, he declares, the liability of a builder depends upon proof of (1) defective construction; (2) a defect known to the contractor; and (3) a defect creating an "imminently dangerous" condition, and that there is no evidence to establish the first and second of these requirements. However, there was testimony as to the condition of the railing after the accident, from which it reasonably may be inferred that a sufficient number of nails of proper strength had not been used, and the record does not show any alteration in the railing between the time of its construction and the accident either by Depaoli or others.

Further, if there was a defect, the carpenters had knowledge of it and such knowledge is imputable to the members of the partnership.

As to the third requirement of liability, some of the cases have limited the exception to liability of the contractor to those things "inherently dangerous," as in *Dahms* v. *General Elevator Co., supra,* or "imminently dangerous" in cases like *Kalash* v. *Los Angeles Ladder Co., supra.* Depaoli argues that as "the railing gave way eighteen years after it was constructed, having been exposed to the elements throughout that period and having been the property of

various persons . . . the railing was not 'imminently danger-ous.' '' He then asserts that, as a matter of law, after the lapse of sufficient time the danger cannot be imminent. However, the exception to the general rule of nonliability stated in *MacPherson* v. *Buick Motors Co., supra,* and approved in the Kalash case, does not include imminence as a requisite. The requirement is that the thing be ''reasonably certain to place life and limb in peril when negligently made.'' Under certain circumstances the passage of time and the wearing effect of the elements, and the intervening occupancy of the house may make applicable some of the established limitations upon the rule. Thus, the element of negligence may be found lacking (*O'Rourke* v. *Day & Night W. H. Co.,* 31 Cal.App. 2d 364 [88 P.2d 191]) ; or some intervening force may have broken the chain of causation. (*Stultz* v. *Benson Lumber Co.,* 6 Cal.2d 688 [59 P.2d 100].) But these incidents of the mere passage of time present questions of fact and not of law. Accordingly, the issues raised by the first cause of action should have been presented to the jury for determination.

As to the second cause of action, the appellant concedes that the lessor owed a duty to disclose to the lessee only *known* latent defects in the premises. Admittedly, Depaoli had no actual knowledge as to the means used to fasten the railing. But, the appellant argues, as a partner in the building enter-prise, he is chargeable with constructive notice of the con-dition. Having acquired such notice, it fixes his liability as lessor-owner of the property after it was conveyed to him.

■ The doctrine of imputed notice does not justify such compounding and extension of the rule. Imputation of knowl-edge is based upon the necessities of general commercial relationships, and where a principal acts through an agent, a third person dealing with such agent is entitled to rely upon his knowledge and notice and it binds the principal. ''Ordi-narily [such third persons] are persons who have dealt with the principal through the agent in question; but it is not essential that they shall have dealt with the agent. The rule respecting notice may apply although they have not known of or dealt with the agent, *if they have had dealings with the principal* or with some other agent of his, which make the matter material to the protection of their interests.'' (2 Mee-cham on Agency (2d ed.) § 1827, p. 1413, emphasis added.) ■ But the rule has never been applied to protect one who has had no dealings with the principal through an agent or otherwise. ■ In his capacity as a builder, Depaoli had no

transactions or dealings with the appellant or her mother. His imputed knowledge as to the defect, if one existed, is therefore not available to the appellant as the basis of a cause of action against Depaoli as a lessor. However, for the reasons heretofore stated, the order granting a nonsuit, insofar as the first cause of action is concerned, cannot stand.

The judgment is reversed.

Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Gibson, C. J., concurred in the judgment.

CARTER, J.—I agree with that part of the majority opinion which reverses the nonsuit as to defendant's liability as a contractor but cannot agree that the nonsuit is sustainable on the theory of his liability as the lessor.

The facts are simple—a house was constructed by defendant and Ferreiros, as partners, presumably for sale. Ferreiros had charge of and supervised the construction. The railing on the back porch was negligently and defectively constructed. The defect was hidden. Ferreiros either actually knew or should have known (the legal effect is the same) of that defect. Defendant had no actual knowledge of it. The partnership sold the house to a third person. From that person defendant purchased it, individually, not as a partnership transaction. Defendant then leased the property to plaintiff's mother. By reason of the defect the railing gave way and plaintiff was injured.

It is conceded by the majority opinion that a lessor (defendant) of real property is liable to the lessee (plaintiff) for injuries resulting from defects in the property which are hidden or latent but concerning which the lessor had knowledge when the property was leased. It also concedes that constructive or imputed knowledge of such defect is equivalent to actual knowledge and that defendant's partner and agent Ferreiros knew of that defect and was responsible for it. It refuses, however, to apply the rule that knowledge of the agent, Ferreiros, is imputed to the principal-defendant, and thus holds defendant is not liable.

The rule above mentioned is stated in our statutes without qualification: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care

and diligence, to communicate to the other." (Civ. Code, § 2332.) It is declared in the Restatement with limitations, as follows: "In accordance with and subject to the rules stated in sections 273-282, the liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give the principal information." (Rest., Agency, § 272.) "Except as stated in section 281, the time, place, or manner in which knowledge of an agent or servant is obtained is immaterial in determining the liability of a principal or master because of it." (Rest., Agency, § 276.) The limitations are that: (1) It must have been the duty of the agent to communicate the knowledge to the principal (Rest., Agency, § 278), and (2) the agent must not have an adverse interest (Rest., Agency, §§ 279, 282). There are some other qualifications that are not here pertinent. The restrictions have also been listed as follows with citation of California cases: "It [the rule of imputed notice] does not apply: (a) Where it would be a breach of confidence to another principal for the agent to disclose his knowledge; (b) where the agent, in the particular transaction concerning which he has received the notice or obtained the knowledge, has an interest adverse to that of his principal; but if the agent is in fact representing his principal in the transaction, even though he may have an opposing personal interest, 'it is his duty notwithstanding his interest to communicate to his company (principal) any facts in his possession material to the transaction, and the law will therefore presume in favor of third parties that he made such communication; (c) where the agent and a third party who claims the benefit of the notice, have colluded to defraud the principal." (1 So.Cal.L. Rev. 177.) Manifestly the instant case does not fall within any of the limitations above mentioned. It was within the scope of Ferreiros' authority to properly construct the house and observe defects therein, and it was his duty to communicate any knowledge thereby acquired to his defendant-principal. His knowledge was acquired during the period he was acting as agent. He had no adverse interest. The sole factors in the instant case that might make it different from the usual case is that at the time the knowledge of the principal (defendant) became important the agency had terminated and the transaction was different (the leasing of the property) and separate from the transaction in which the agent was involved (the construction of the house). How

those factors require a refusal to apply the rule is difficult to see. To say, as does the majority opinion, that defendant as a contractor (builder of a house) would have imputed to him the knowledge but not in his capacity as a lessor, is a highly metaphysical division of a person's mind into departments each of which is wholly insulated from the other. As it has been aptly said: ''A New Jersey court, however, leads us into the scenes of Alice in Wonderland in reaching a result which, nevertheless, is correct, as the agent was acting during the whole transaction for his own purposes only. The defendant's superintendent, unauthorized and for the purpose of taking the action subsequently taken, gave to the plaintiff some of the company's property. Later, in the name of the company, he instituted a criminal prosecution, alleging a theft of the 'gift'. In the subsequent action for malicious prosecution, the court reasoned that the superintendent, as superintendent did not know that he had given the property away; that knowledge was held only by him, the man. But the superintendent did know that the plaintiff had the property, and this knowledge alone being imputed to the company, the latter had reasonable grounds for instituting the action. *The Method of reasoning leaves us wondering how the wicked individual was able to conceal from the virtuous superintendent his load of sin.*'' (65 U. of Pa. L. Rev. 1, 14, 15.) [Emphasis added.]

Suppose the case where the owner of a house hires an inspector to examine it for defects. His discovery of a hazard is not communicated to the owner, who then leases the property to a person who is injured by reason of the dangerous condition. Can liability be doubted? The result would be no different if the inspector had been engaged to make the inspection because of the owner's concern for his own safety as an occupant of the house with no thought of leasing it, and later he decides to and does lease it, and an injury follows.

Finally, I see no reason for the discussion of the liability of defendant on the landlord-tenant theory inasmuch as the forepart of the opinion holds that the judgment following the nonsuit must be reversed as a cause of action has been established. That reversal is the end of the case, so far as the present appeal is concerned.