[Civ. No. 16189.   First Dist., Div. Two.   May 18, 1955.]

ARDINE SCHIFANO, Appellant, v. SECURITY BUILD-
ING COMPANY et al., Defendants; BRIDGES CON-
STRUCTION COMPANY, Respondent.

Morgan & Beauzay and Robert Morgan for Appellant.

Rankin, Oneal, Luckhardt, Center & Hall for Respondent.

KAUFMAN, J.—This is an appeal from an order granting
a motion for a nonsuit in favor of Bridges Construction Com-
pany.   Plaintiff Ardine Schifano brought an action for
damages against the owner of the premises, Security Build-
ing Company, for negligent maintenance of a defective con-
dition on the premises, and against the contractor Bridges
Construction Company, for negligent construction of a trash
box of an abnormally dangerous nature which had been ac-
cepted by the owner, Security Building Company.   Motion
for nonsuit against the owner, Security Building Company
was denied, and the jury returned a verdict in favor of that
defendant.   Appeals were taken as against both defendants,
but that against respondent Security Building Company was

dismissed, as said appeal was taken only from the order denying plaintiff's motion for a new trial.

Plaintiff Ardine Schifano was an employee of a tenant on the second floor of the building owned by Security Building Company in San Jose, California. Janitor service was not furnished to the tenants, but a waste can was provided by the owner on the second and third floors. About seven months prior to the accident, for the purpose of fire prevention, defendant owner through its manager, Charles Munger, directed Bridges Construction Company to construct a box around each of these waste cans, each box to have a lid which could be raised to allow waste paper to be deposited in the receptacles. The boxes and lids were asbestos lined, and the lids were to be closed at all times when not in use, in order that any possible fire would be smothered for lack of draft. It was to be built so that the lid would not rest up against the wall, according to the builders' testimony, and he stated that it would not rest against the wall unless it were pushed back against the wall by the user. Witnesses testified variously as to the weight of the receptable's lid, one witness estimating that it was 15 pounds. One of defendants' counsel had it weighed during the time the trial was in progress and testified that the weight was $8\frac{3}{4}$ pounds. The box lid measured 20 inches by $32\frac{1}{2}$ inches and was attached to the box by hinges which were about 2 inches from the wall against which the receptacle was located. The box or receptacle was 40 inches in height in the front and 49 inches in the rear. After completion and installation of the waste receptacles and their acceptance by the owner, the contractor had nothing further to do with them.

Plaintiff had been working in the building at the time the waste receptacle was installed on her floor. She used the box possibly hundreds of times without incident in the seven months' period prior to the accident. On the morning of October 10, 1950, she took two waste baskets down the hall to empty them into the receptacle. She lifted the lid with both hands, put it against the wall with both hands, emptied one basket, and was leaning down emptying the second basket when the lid fell on her head, hitting her in the region between her eyebrow and hairline. She had always followed the same procedure in emptying the baskets, and this was the first time the lid fell. She did not know what caused it to fall. Plaintiff testified that the lighting was poor in the area where the receptacle was located, but that fact

cannot be considered in the case against the building contractor as he had no control over that factor.

Mr. Munger, secretary-treasurer of the owner, testified that the lid was supposed to go up and stay back, but that it was to be always kept closed, and that on many occasions he found that it had been left open, and closed it himself. A Mrs. Stewart who had a place of business in the building testified that she used the waste receptacle frequently, that the lid would stay up against the wall if you didn't jar it, that there wasn't much of a lean to it. She could hold the lid part way back while she dumped her bucket. Her husband, who sometimes helped her, had once been hit on the nose by the lid. He testified that sometimes the lid would stay up without holding it. He could not say whether he had pushed the lid all the way back on the occasion when he got hit. The witness said that he was leaning over somewhat at the time, although he stated that it wasn't necessary to lean over. The janitor of the building admitted that the lid had once brushed against his shoulder.

Appellant contends that it was error to grant the nonsuit in that there was evidence which tended to support the allegations of the complaint, and on such motion, testimony favorable to the plaintiff must be accepted as true. (*Hale* v. *Depaoli*, 33 Cal.2d 228 [201 P.2d 1, 13 A.L.R.2d 183]; *Toschi* v. *Christian*, 24 Cal.2d 354 [149 P.2d 848]; *Hall* v. *Barber Door Co.*, 218 Cal. 412 [23 P.2d 279]; *Estate of Burns*, 26 Cal.App.2d 741 [80 P.2d 77].)

Appellant admits that the general rule is that when the contractor's work has been completed and accepted by the owner, the contractor is not thereafter liable to third persons for injury suffered by reason of the condition of the work. (13 A.L.R.2d 201; 13 Cal.Jur. 1051, § 23; 27 Am.Jur. 534, § 55; *Johnston* v. *Long*, 56 Cal.App.2d 834, 837 [133 P.2d 409].) Both appellant and respondent agree that one of the exceptions to the rule of nonliability of the contractor is that if the thing constructed is inherently or imminently dangerous, or if the contractor's acts result in an imminently dangerous situation the natural or probable consequence of which would be injury to persons who are likely to come in contact with the work after its acceptance, the liability of the contractor extends to such persons. (*Hale* v. *Depaoli, supra*; *Dahms* v. *General Elevator*, 214 Cal. 733 [7 P.2d 1013]; *Johnston* v. *Long, supra*.)

In *Hale* v. *Depaoli*, a porch railing gave way under plain-

tiff's weight, causing her to fall some distance to the pavement below. There was evidence from which it could be inferred that the railing had been defectively constructed by the contractor. Such condition was not one which was obvious to either the owner or third persons who might rely on the railing for support. It was a concealed defective condition of a highly dangerous character, for the very purpose of the rail was to prevent persons from falling to the area below. The court stated that "A structural defect in this protection would be 'reasonably certain to place life and limb in peril,' and there was evidence from which a jury might infer that the railing was not erected in accordance with sound building practice." There is no such testimony in the present case. Here danger in using the waste receptacle was an obvious one. It was an extremely simple contrivance and its operation was fully under the control of the person using it. If the lid balanced precariously, that was something immediately observable by the person operating it. Plaintiff herein had used it hundreds of times. There is no evidence that there was anything different about the box on the day of the accident than on any other day. There was no testimony that any part of the structure gave way which would make this case comparable in any way to *Hale* v. *Depaoli, supra,* on which appellant relies.

This case cannot be considered comparable to *Hall* v. *Barber Door Co., supra,* nor to *Johnston* v. *Long, supra.* In the Hall case the independent contractor was held to owe a duty to plaintiff therein, where the work of installation of an overhead door was still in progress. The door weighed 300 pounds and was operated by a cable which passed over a drum or pulley fitted to a shaft. When the accident occurred the door was not completely installed, and there was evidence that when the door fell the setscrews holding the drum had slipped because they had not yet been countersunk into the shaft. In *Johnston* v. *Long,* the independent contractor was sued for failure to properly repair a large overhead lift-type door operated by a lifting apparatus attached to the door. A demurrer was sustained without leave to amend upon the theory that respondent was relieved of liability whether its status was an independent contractor or agent, by reason of its completion of the work and acceptance by the land-occupiers prior to the accident. Appellant therein contended that it was an abuse of discretion not to permit him leave to amend to show that the door was a dangerous instrumen-

tality and to show also that there was knowledge of the defect on the part of the respondent and lack of knowledge on the part of the land-occupiers. It was held that the appellant should have been permitted to so amend his complaint.

In the instant case we have a simple hinged lid of a box, the working principles of which every person is familiar with from early childhood. If the lid of a box is too close to a wall it will not stay up without being held back. If it is so close that it balances precariously then the danger is an obvious one. We think that the trial court here properly granted the motion for nonsuit, for there is nothing in the evidence viewed in the light most favorable to appellant to warrant bringing this case within any of the exceptions to the general rule that the liability of the contractor for subsequent injuries to third persons ceases after acceptance of the work by the person for whom it was done.

In view of the foregoing, the judgment of nonsuit must be and is hereby affirmed.

Nourse, P. J., and Draper, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.