[Civ. No. 22227.   Second Dist., Div. Two.   Aug. 5, 1957.]

JEWELL HOGAN, Appellant, v. LEE MILLER et al., Respondents.

N. E. Youngblood, William M. Brandon, Francis X. Marnell and Anthony T. Carsola for Appellant.

Gitelson, Coyle, Cooper & Savitch, Moss, Lyon & Dunn, Gerold C. Dunn, Henry F. Walker and Betts, Ely & Loomis for Respondents.

FOX, J.—Plaintiff was injured while opening a window in the ladies' restroom in the building where she was employed. She sued the supplier of the window (Lee Miller); the general contractor, who built the new addition in which the ladies' restroom and the window were located (Gilbert J. Martin); the owner of the building (Milton Farbstein[1]); and the intermediate lessor (Frank J. Balé) who contracted with Martin for the construction of the new addition to the building. Prior to the trial, plaintiff executed ''a covenant not to sue further'' as to defendant Miller. At the conclusion of the trial the court directed a verdict in favor of the other defendants. Hence this appeal.

Defendant Milton Farbstein owned the real property in question and leased it for five years, commencing October 1, 1951, to Balé, who conducted a machine shop in the building. Desiring certain alterations in the building and the erection of an addition at the rear, Balé entered into a contract with Martin to that end. Balé borrowed $5,000 from Farbstein with which to finance the project. It does not appear that Farbstein participated further in this venture. Plans and specifications were drawn in Martin's office. As originally drafted, these did not include a ladies' restroom in the new addition nor provide for a window therein. During

---

[1]Farbstein's wife, Ruth, is also a defendant, but it does not appear that she had any interest in the property or any connection with the lease. Hence she cannot be held liable. (*Connor* v. *Grosso*, 41 Cal.2d 229, 230 [259 P.2d 435].)

construction, Balé advised Martin there would be women employees and it would therefore be necessary to have a restroom for them. This resulted in an oral change of plans, whereby a ladies' restroom was provided and the window here in question was installed.

Contractor Martin commenced work on the new structure in November or December, 1951. He completed it in January or February, 1952. Balé thereupon accepted it and "took occupancy." Balé subleased the new addition to Bal-Aero in March or April, 1952. In the following October, it was subleased to Tepfer Aircraft Company, which took possession. Thereafter, Balé had nothing to do with the premises except to collect the rent. Plaintiff worked in this new addition from March or April, 1952, to the happening of the accident on March 23, 1953, first as an employee of Bal-Aero and then for Tepfer, when the latter took possession of the premises.

The window was described as a "standard utility window." Mr. Sill, an architect, testified that such a window was not commonly found in restrooms but was generally used in utility buildings—"farm type buildings." The window was used for ventilation and was the only one in that end of the shop. The bottom of the window was four feet from the floor. It was approximately $3\frac{1}{2}$ feet high and $2\frac{3}{4}$ feet wide.

The window was delivered as a unit directly to the job by Miller and installed by contractor Martin. It consists of a steel frame which is cemented into the framework of the building and permanently affixed thereto. Inside this frame two window frames are fitted. These are divided so that the lower half is stationary, and the upper half opens inward from the top like a transom. It is designed so that it can be lifted out and placed on the floor (there being no hinges) and thus provide better ventilation in warm weather. There is a latch at the top of the vented section which is operated manually. There are two brackets (sometimes referred to as clips) or stops—one on each side at the bottom of the window—which control the distance the window opens. These brackets are steel, an eighth of an inch thick, $1\frac{1}{4}$ inches high, and $1\frac{1}{2}$ inches long. Each bracket is attached by two screws. No chains or side arms are provided for the operation of the window. This, of course, is perfectly apparent.

Plaintiff testified she opened and closed the window practically every working day from March or April, 1952, to the time of the mishap on March 23, 1953. She used a stick to release the catch at the top of the window. She held the

stick in her right hand and let the window down with her left. In opening and closing the window plaintiff was directly facing it. On the morning of the accident she had gone through this procedure and while placing the stick in the corner the window fell and struck her.

After the accident, examination disclosed the brackets were bent inward, i. e., toward the room. It was the opinion of the architect that the brackets would be bent back by the continual use of the vent.

In seeking a reversal, plaintiff contends the court erred in (1) not permitting the jury to pass on the issue of negligence; (2) in holding that the doctrine of res ipsa loquitur does not apply; and (3) in the exclusion of certain evidence.

■ ''As stated in *Burlingham* v. *Gray* (1943), 22 Cal.2d 87, 94 [137 P.2d 9], 'A court may direct a verdict only when, disregarding conflicting evidence and giving plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff [citations].' '' (*Sokolow* v. *City of Hope,* 41 Cal.2d 668, 670 [262 P.2d 841].)

### Liability of General Contractor

■ It is the general rule that when a contractor's work has been completed and accepted by the owner, the contractor is not thereafter liable to third persons for injury suffered by reason of the condition of the work, even though he was negligent in carrying out the contract. (*Hale* v. *Depaoli,* 33 Cal.2d 228, 230 [201 P.2d 1, 13 A.L.R.2d 183]; *Schifano* v. *Security Bldg. Co.,* 133 Cal.App.2d 70, 72 [283 P.2d 306]; *Johnston* v. *Long,* 56 Cal.App.2d 834, 837 [133 P.2d 409].) Plaintiff concedes that defendant Martin's work was accepted by Balé in the case at bar. ■ Plaintiff contends, however, that this case comes within an exception to the general rule: ''If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger.'' (*Hale* v. *Depaoli, supra,* at p. 231.) This exception relates to latent defects in the construction of the article or structure in question, the existence of which is known or reasonably should be known by the contractor. It has no application to a situation where no structural defect is involved. There was *no* evidence that the window in ques-

tion was not properly fastened to the masonry, or that the window was itself improperly·constructed. Nor was there any evidence that the steel brackets, which held the transom-like upper portion of the window in place when it was open, were defective at the time the window was installed. The only evidence offered by plaintiff on this issue was (1) that there was no chain or side arm which would secure the window in place when it was open, and (2) that this type of window was normally used only in barns and other utility buildings. The latter is totally irrelevant on the issue of defective construction. The former would be relevant only if it were shown that a chain or side arm normally accompanies this type of window. The evidence, however, showed that the window in question was no different from other windows of the same type and no chain or other device was normally used. It was "strictly a standard utility window."

An analogous factual situation was involved in *Schifano* v. *Security Bldg. Co.*, *supra*. In that case the defendant building contractor was employed by the building owner to construct a box with a lid which could be raised for deposit of waste papers therein. Plaintiff was an employee of a tenant in the building when the waste receptacle was installed on her floor. She used it without incident for several months before the accident. On the occasion of the accident, she was emptying a basket of waste paper and leaning over when the box lid, which she had opened, fell on her head and injured her. The trial court nonsuited plaintiff as against the contractor. In affirming, the court distinguished *Hale* v. *Depaoli* as follows:

"In *Hale* v. *Depaoli,* a porch railing gave way under plaintiff's weight, causing her to fall some distance to the pavement below. There was evidence from which it could be inferred that the railing had been defectively constructed by the contractor. Such condition was not one which was obvious to either the owner or third persons who might rely on the railing for support. It was a concealed defective condition of a highly dangerous character, for the very purpose of the rail was to prevent persons from falling to the area below. The court stated that 'A structural defect in this protection would be "reasonably certain to place life and limb in peril," and there was evidence from which a jury might infer that the railing was not erected in accordance with sound building practice.' There is no such testimony in the present case. Here danger in using the waste receptacle was an obvious one.

It was an extremely simple contrivance and its operation was fully under the control of the person using it. If the lid balanced precariously, that was something immediately observable by the person operating it. Plaintiff herein had used it hundreds of times. There is no evidence that there was anything different about the box on the day of the accident than on any other day. There was no testimony that any part of the structure gave way which would make this case comparable in any way to *Hale* v. *Depaoli, supra,* on which appellant relies.'' (Pp. 72-73.)

In the present case it could not even be said that the structure gave way. Plaintiff's own expert testified that the type of window used here was so constructed as to permit the upper portion to be lifted free from the frame and to be entirely removed so that better ventilation might thus be provided. This was apparent to anyone familiar with the window. The reason the window fell out on the day of the accident was that the brackets which held the window in place when it was open had become bent due to continual use. Plaintiff concedes this fact in her brief. Plaintiff failed to introduce any evidence to show that the steel brackets were inadequate in strength or durability, or were otherwise defective when installed. Although plaintiff had an expert examine the brackets, his only testimony on this issue was that he could not recall having seen that type of bracket before.

Moreover, the nature and condition of this window were not concealed. No structural defect was proved. The character, structure and operation of the window were apparent to anyone using it. As in the Schifano case, plaintiff had opened and closed the facility hundreds of times. Although the steel brackets may have become bent, thus creating a dangerous condition, such condition was not due to any fault of the contractor who had turned the building over to Balé more than a year prior to the accident, but rather to the use which the tenants, including plaintiff's employer,[2] had made of this window. Therefore, there is nothing in the evidence, viewed in the light most favorable to plaintiff, to warrant bringing this case within any exception to the general rule that the liability of the contractor for subsequent injuries to third persons ceases after acceptance of the work by the person for whom it was done.

---

[2]The Industrial Accident Commission made an award to plaintiff for her industrial injury.

## LIABILITY OF OWNER

In the absence of fraud, concealment or a covenant in the lease, a landlord is not liable to a tenant or his invitees for defective conditions or faulty construction in leased property. (*Wilson* v. *Ray*, 100 Cal.App.2d 299, 303 [223 P.2d 313]; *Colburn* v. *Shuravlev*, 24 Cal.App.2d 298, 299 [74 P.2d 1060].) If a plaintiff is seeking to recover against a lessor on the theory that he has a cause of action falling within any exception to the general rule, such plaintiff must plead and prove facts which will bring him within the exception under which he claims. (*Wilson* v. *Ray*, *supra*, at 303-304.) In the present case there is no proof that defendant Farbstein concealed any material facts, committed any fraud, or made any covenants when he leased the premises, by which he might be held liable. We have already discussed the failure of proof as to any defects in the steel brackets which held the window in place. Again it should be noted that any defect based upon the nature and construction of the window was apparent to anyone operating it. It is therefore clear that plaintiff has not established any duty or breach thereof on the part of Farbstein.

## LIABILITY OF INTERMEDIATE LESSOR

Defendant Balé stands in the same relation to the plaintiff as Farbstein. Having sublet the premises to Tepfer Aircraft Company, he is the equivalent of a lessor. It does not appear that he was guilty of any fraud, concealment or breach of covenant. Therefore, as to him, plaintiff also has failed to establish any duty or breach thereof.

Plaintiff contends that Balé is subject to the same liability as contractor Martin, since Balé hired Martin to construct the building and directed Martin to make the changes in the original plans whereby the window which ultimately injured plaintiff was installed. Even if this be true, we have already determined that defendant Martin owed no duty to plaintiff under the facts in this case. Thus, defendant Balé likewise owed her no duty.

## DUTY TO INSPECT

We have thus concluded that none of the defendants owed to plaintiff a duty for the breach of which liability would attach. The failure to discover and remedy the bent condition of the steel brackets on the window before they caused plaintiff's injury may have been negligence, but under the facts of this case none of the defendants sued herein owed a duty to inspect and thereby discover such condition.

## Res Ipsa Loquitur

The next contention is that the trial court erred in holding that the doctrine of res ipsa loquitur was not applicable in this case. Plaintiff does not explain against which of the defendants she seeks to invoke the doctrine. Hence we must assume that she seeks to have it applied as against every defendant. In any event the doctrine can have no application in this case. We have already determined that none of the defendants herein owed a duty of care to plaintiff. ■ Res ipsa loquitur is applicable only to show a breach of duty, not the existence of a duty: "Res ipsa loquitur leads only to the conclusion that the defendant has not exercised reasonable care. It is not in itself any proof that he was under any duty to do so. Unless there is enough more to show such a duty, the plaintiff will be denied recovery even though he has otherwise made out a res ipsa case." (Prosser, *Res Ipsa Loquitur in California,* 37 Cal. L. Rev., 183, 208.)

■ Furthermore, even if we assume that each defendant did owe a duty of care to plaintiff, res ipsa would still not apply. One of the essential elements which plaintiff must establish before the doctrine will apply is that the defendant had exclusive control of the thing causing the injury or, if that control had been relinquished, that the instrumentality had not been improperly handled by some third person or its condition changed after control was relinquished. (*Danner* v. *Atkins,* 47 Cal.2d 327, 331 [303 P.2d 724]; *Burr* v. *Sherwin Williams Co.,* 42 Cal.2d 682, 691-692 [268 P.2d 1041].) Although there was evidence that others besides plaintiff operated the window, there was no showing as to the degree of care they used in opening the window. In this connection, plaintiff failed also to introduce any evidence of her own care when opening the window. Plaintiff thus failed to establish another element requisite to the application of res ipsa—that the injury was not due to any voluntary action or contribution on her part. (*Raber* v. *Tumin,* 36 Cal.2d 654, 659 [226 P.2d 574]; *Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258].) ■ The doctrine does not apply when the injury *might* have been caused by plaintiff's negligence or have been due to one of several causes, for some of which the defendant is not responsible. (*Nelson* v. *Douglas Pedlow, Inc.,* 130 Cal.App.2d 780, 784 [279 P.2d 823]; *Olson* v. *Whitthorne & Swan,* 203 Cal. 206, 208 [263 P. 518, 58 A.L.R. 129].)

116

Plaintiff asserts prejudicial error was committed in excluding certain evidence. She first argues that her expert should have been permitted to testify as to (1) whether or not "the manner of installation of this window constituted a dangerous condition," and (2) whether or not the window "had been installed in a manner commonly used in such building trades in Southern California." There was no error in either of these rulings.

As to the former, the rule is that ordinarily an expert cannot testify that a structure constituted a dangerous condition, only the facts may be elicited from which the conclusion follows. (*Baccus* v. *Kroger,* 120 Cal.App.2d 802, 804 [262 P.2d 349]; *Wilkerson* v. *City of El Monte,* 17 Cal. App.2d 615, 622 [62 P.2d 790].) In *Sappenfield* v. *Main Street etc. R. R. Co.,* 91 Cal. 48 [27 P. 590], the court, at page 60, stated the principle here applicable in this language: "When the inquiry relates to a subject whose nature is not such as to require any peculiar habits or study in order to qualify one to understand it, or when all the facts upon which the opinion is founded can be ascertained and made intelligible to the court or jury, the opinion of the witness is not to be received in evidence." The manner of installation of this window was simple and no special knowledge was required to understand its operation. All the pertinent facts could be made perfectly clear to the arbiter of the facts. It was therefore proper to exclude the opinion of plaintiff's expert on this point. (*Wilkerson* v. *City of El Monte, supra.*)

Plaintiff is in no position to complain in relation to her second assignment of error. It does not appear from the question which plaintiff's expert was asked that the answer would be favorable to her, and she failed to make any offer of proof so indicating. "It is settled that where a question to which an objection is sustained does not indicate that the answer will be favorable to the party seeking to introduce the testimony, before the ruling will be reviewed on appeal an offer of what is proposed to be proven must first be made to the trial court so that the reviewing court may determine whether the evidence would be beneficial to the party offering it." (*Ogden* v. *Title Ins. & Trust Co.,* 129 Cal. App.2d 26, 28 [276 P.2d 146]. See also *Duff* v. *Schaefer Ambulance Service, Inc.,* 132 Cal.App.2d 655, 671 [283 P.2d 91].)

Plaintiff's final complaint is that the court erred in "refusing to allow defendant Balé to testify whether or not he relied on defendant Martin to put in a window that would be safe." Neither argument nor authority is offered in support of this point. Under such circumstances we are not called upon to consider it. (*Gray* v. *Walker,* 157 Cal. 381, 386 [108 P. 278] ; *Estate of Volen,* 121 Cal.App.2d 161, 166 [262 P.2d 658].)

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 3, 1957. Carter, J., was of the opinion that the petition should be granted.