[Civ. No. 9580.   Third Dist.   Sept. 8, 1959.]

VERNA H. ALCORN et al., Appellants, v. FREDERICK CHESTER DAVIES et al., Respondents.

Alfred E. Frazier for Appellants.

Pugh & Webster and Stanley Pugh for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment based on a defense verdict in an action brought by Verna H. and William J. Alcorn, husband and wife, to recover damages for personal injuries to Verna and property damage suffered by William when Verna was struck by a jeep driven by Frederick Chester Davies.

Appellants contend that the evidence is insufficient to sustain the verdict and that the court erred in giving certain instructions and in refusing to give an instruction requested by appellants.

Having in mind first the contention that the evidence was

insufficient to support the verdict, we will state the evidence relied upon by respondents as constituting substantial support.

On October 6, and 7, 1956, plaintiffs and appellants were hunting guests of respondent Frederick Davies and his wife at their mountain cabin located about 10 miles west of the crossroads town of Paskenta in western Tehama County. Plaintiffs were San Franciscans and had known the Frederick Davies for about 12 years. On October 7th the plaintiffs concluded their deer hunting and left the cabin to return to San Francisco. Their course ran in a general easterly direction on a dirt road. When they reached a point less than two car lengths south of the bridge across Bennett Creek they stopped their car in such a position that the left half was still on the traveled roadway. Shortly thereafter an automobile containing unknown persons, who have never been located or identified, stopped on the road opposite the plaintiffs' vehicle, with their car headed in the same direction. The road at this point is approximately 14 feet wide. At the left or westerly side of the road was a ditch or gulch and the strangers' car stopped about one foot therefrom. The two cars were only 4 or 5 feet apart and prevented the passage of other vehicles. While the cars were so parked appellants stood in the middle of the road, talking to the strangers. This situation had lasted for five to ten minutes when defendant Frederick Davies, accompanied by his wife, drove his jeep down the steep grade in low gear, intending to cross the Bennett Creek bridge and continue on to the Davies ranch home east of Paskenta. Davies stopped momentarily on a sharp turn some 360 feet south of the bridge. He looked down toward the bridge and saw what he described as the "block," consisting of the two stationary cars near the bridge and the appellants standing on the roadway space between the cars. As Davies had come down the road the brakes on his jeep worked perfectly and enabled him to stop at the point where he observed the block. He then proceeded slowly down the grade toward the stopped vehicles and when about 40 feet distant therefrom and while going at a speed of about four miles per hour he applied his foot brake, intending to stop at that point. He pumped the brake pedal several times, but there was no response whatever. The jeep was entirely without brakes. He was unable to go to his left because of the drainage ditch. Immediately ahead of him on the road were the two cars with appellant William Alcorn standing between. Davies applied his hand brake and turned his jeep

abruptly to the right, attempting to get off the road. Shortly before this, appellant Verna Alcorn had left her position between the two cars, walking south in the direction of the approaching jeep. She passed behind the Alcorn car and to the side of the road toward which Davies was turning. She was struck by the jeep and injured. Examination of Davies' vehicle at a garage in Corning a day or two after the accident disclosed that a short length of rubber tubing connecting the hydraulic oil line with the right front brake mechanism had ruptured, allowing the brake fluid to escape and wholly disabling the brake system. There was evidence that Davies, about six months before the accident, had had the brake system on the jeep worked on and repaired; that two months before the accident he had had a new master cylinder installed, at which time the brake system had been tested and found to be in good working order. He testified that he had driven his jeep frequently up to the time of the accident along mountain roads requiring good brakes and had had no indication that the braking system was in any way inadequate or unsafe. In a letter introduced in evidence by appellants, written by Davies to the Alcorns a few days after the accident, Davies made statements as follows: "We followed you out from the house. It was very foggy until we reached mudflat. My brakes were perfect. When we reached the corner where we could see Bennett Creek, I pulled out on the right to see around the corner. My brakes were good. I saw the road block ahead and went slowly expecting to stop thinking some one had trouble. When I was about 40 feet from the block I applied my brakes. I had no brakes. The Jeep was moving ahead slowly. I tried to put it in reverse, but it wouldn't change. I glanced ahead looking for a way to get through. There wasn't any. There was a gulch on the west side. About four feet East of that was a car in the middle of the road with an elderly lady in it. East of the car was your car, and between the cars another elderly lady and Verna also you and another man. The only opening I had was to go East over the bank of the road and take my chances of hitting a rock. I turned as fast as I could and missed the big rock. The next thing I saw Verna was in front of the Jeep. The Jeep was about stopped but it knocked her down and drug her about two feet." We will later discuss the sufficiency of the foregoing evidence to support the verdict.

Mrs. Alcorn described the accident as follows: The Alcorns were driving a 1953 Plymouth station wagon. No one else

was with them, but they had a dog in the car. They had passed over the Bennett Creek Bridge many times and always stopped at the bridge. They did so this time. They let the dog out for a run. Mr. Alcorn had pulled off just south of the bridge. Both got out of the car. Another car came along going in the same direction and stopped parallel to the Alcorn car and just a little bit ahead. The Alcorns went over to the car and talked with them. Mrs. Alcorn heards the jeep coming and said, ''Here come the Davies now.'' Just about the time the jeep came around the first bend she took a few steps toward the Alcorn car and stopped about even with the back of it. Then she walked off the road competely. Mr. Davies made a momentary stop about 40 feet away and then the jeep started moving. It was a hesitant stop. He was going very slow. He kept on going along this road and when he came directly opposite to where she was standing, he turned his head and looked at her with a little grin on his face. He turned the jeep approximately the same time as he turned his head and as he turned the jeep the jeep sort of made a sudden spurt ahead and she tried to get out of his way but could not.

Mr. Alcorn essentially and substantially corroborated Mrs. Alcorn's description of the accident.

The jury could, of course, accept respondent Davies' testimony to the effect that his brakes suddenly went out when he attempted to stop about 40 feet south of the standing vehicles; that the brake failure was caused by the defective condition of the hose connection which resulted in a splitting of the hose and the release of the brake fluid. They could accept his further testimony of the care he had taken to maintain his brakes in good condition as excusing his failure to obey the statute requiring him at all times while operating his jeep on the highways to have it equipped with the braking facilities required. ■ Conduct which will excuse a violation of statutory duty has been thus described by the Supreme Court in *Alarid* v. *Vanier,* 50 Cal.2d 617, 624 [327 P.2d 897]:

''In our opinion the correst test is whether the person who has violated a statute has sustained the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.''

■ Applying this test and accepting Davies' explanation of the way in which the accident happened the jury could

conclude that his violation of his statutory duty relating to adequate brakes was excused. We hold the evidence sufficient to sustain the verdict.

■ Appellants are correct in their contentions that errors were committed in giving instructions requested by respondents. The court gave the unavoidable accident instruction condemned in *Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652 [320 P.2d 500], and in *Alarid* v. *Vanier, supra*. The court instructed the jury that: "The mere fact that an accident happened, considered alone, does not support an inference that some party, or any party, to this action was negligent." The uncontradicted evidence here warranted the application of the doctrine of res ipsa loquitur and it was error to give the quoted instruction. (*Alarid* v. *Vanier, supra*, p. 625.) And as stated in *Alarid* v. *Vanier, supra*:

". . . For the reasons set forth in the cited cases holding it is error to give the mere happening of the accident instruction where an inference of negligence arises as a matter of law, it is likewise error to give that instruction where a presumption of negligence arises as a result of defendant's disobedience of a statute."

Accepting Davies' explanation of the accident as occurring from defective brakes, a presumption of negligence arose from violation of statutory duty.

The trial court also at respondents' request instructed the jury on the doctrine of assumption of risk. The instruction read as follows: "We have a legal principle commonly referred to by the term 'assumption of risk.' It now will be explained to you: A person is said to assume a risk when she freely, voluntarily and knowingly manifests her assent to dangerous conduct or to the creation or maintenance of a dangerous condition, and voluntarily exposes herself to that danger, or when she knows that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, and voluntarily places herself, or remains, within the area of danger. A person who thus assumed a risk is not entitled to recover for damage caused her without intention and which resulted from the dangerous condition or conduct to which she thus exposed herself."

■ Prosser (Torts, 2d ed., p. 303) says:

"The defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct

toward him, and to take his chances of harm from a particular risk."

The particular risks here involved were the defective condition of the brakes on the Davies jeep, and the chance that, given effective brakes, he would carelessly drive his jeep against Mrs. Alcorn. ██ The doctrine of assumption of risk is based on the theory that there has been a voluntary acceptance of a risk, and such acceptance, whether express or implied, requires knowledge and appreciation of the risk. (*Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 384 [240 P.2d 580].) ██ It is obvious that there is nothing in the record in this case that could justify the giving of an instruction on the assumption of risk. There is no proof whatever that Mrs. Alcorn had any knowledge of defective brakes on the jeep, nor any proof that she had knowledge of any probability that Davies, the road block and the people involved being all in plain sight, would strike her with his jeep. Of course we are not concerned with contributory negligence when discussing assumption of risk.

The next question is whether or not, in view of the errors noted, the judgment appealed from should be reversed. The constitutional mandate forbids the reversal of judgment for misdirection of the jury unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. ██ The test to be applied in determining whether or not there has been a "miscarriage of justice" is stated in *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243]:

". . . A 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."

Applying the foregoing test we are convinced that the judgment appealed from should be reversed and it is so ordered.

Schottky, J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.