[Civ. No. 25817. Second Dist., Div. Three. Nov. 21, 1962.]

LOUISE D. McDANIEL, Plaintiff and Appellant, v. DOUG-
LAS DOWELL JR., et al., Defendants and Respondents.

Ross & Price for Plaintiff and Appellant.

Vaughn, Brandlin, Robinson & Roemer, Walter R. Trinkaus, Moss, Lyon & Dunn, Frank C. Christl and Henry F. Walker for Defendants and Respondents.

FORD, J.—This is an appeal by the plaintiff from a judgment for the defendants in an action to recover for personal injuries.[1]

The plaintiff, Louise McDaniel, was injured when she was knocked down by another skier, the defendant Dowell, while she was about to avail herself of the aid of a ski tow for the purpose of going to the top of a hill used by skiers. The ski tow was operated by defendant More, from whom Mr. and Mrs. McDaniel had purchased tickets which entitled them to use the tow. The tow consisted of a moving rope which was gripped by the user who would then be pulled to the top of the incline while on his skis.

The plaintiff and her husband had skied in the area before and had used the tow earlier on the day of the accident. When she was hit, Mrs. McDaniel was about 50 feet from the lower end of the tow, near a sign containing the words "Load here," and was holding onto the rope with both hands. She did not see Mr. Dowell before he came in contact with her. Mr. Dowell was about 25 or 30 feet away from Mrs. McDaniel when Mr. McDaniel noticed him. Mr. McDaniel testified in part as follows: ". . . when he was a little—I am not sure of the distance, I am just estimating—approximately 15 feet away he seemed to be off balance and he didn't seem to be sure that he would stay upright on his skis, and he kept coming in pretty much a straight line directly toward the point of impact. . . . I don't believe that he did fall down to the ground but he was not upright. I think he was off balance, leaning." At the time of the impact, Mr. Dowell "was in the

---

[1] In the notice of appeal it is stated that the appeal is also from the order denying the plaintiff's motion for a new trial. That order is not appealable. (*Rodriguez* v. *Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907].)

process of falling.'' Mr. McDaniel thought that Mr. Dowell's skis came in contact with Mrs. McDaniel, hitting her across her legs.

Mr. McDaniel further testified in part as follows: ''The course the skiers usually take is at an angle across from the top of the slope aiming on toward a point approximately 30 to 50 feet above the end of the rope tow at the bottom of the hill. They usually start down that way and then they make their turns away from the rope tow, come up to a rise or little knoll along in this area directly west of the pole at the lower end of the rope tow. They usually come to a stop at that point and they go around the pole and come up on the east side of the tow itself.''

Mrs. McDaniel testified that when she had been to Table Mountain before, she had seen skiers fall down. In the course of skiing she had experienced falls herself. Ben Rinaldo, head of the Table Mountain Ski Patrol, testified that even expert skiers ''can go out of control,'' and that when skiers do so they may fall or they may ski out of control for a distance before they fall; anyone who happens to be in the pathway of such a skier may be hit.

One of the plaintiff's contentions is that the evidence does not justify the verdict in favor of the defendants. However, the plaintiff requested the preparation of only a partial transcript of the oral testimony and did not designate such contention as one of the points to be raised on appeal. (See Cal. Rules of Court, rule 4(b).*) Consequently, the contention cannot be considered. (*Calhoun* v. *Davis,* 121 Cal.App.2d 167, 171 [262 P.2d 620].)

The plaintiff argues that the ''rope tow is an elevator to transport persons from one level to a higher level on the hill'' and that, therefore, instructions requested by her which embodied the law as to the duty of care of a common carrier should have been given to the jury. It is true that the operators of ski lifts have been treated as common carriers in cases in which the skier's body was transported by means of a device such as a chair lift. (*Fisher* v. *Mt. Mansfield Co.,* 283 F.2d 533, 534; *Grauer* v. *State of New York,* 9 App.Div.2d 829 [192 N.Y.S.2d 647, 649]; *Vogel* v. *State,* 204 Misc. 614 [124 N.Y.S.2d 563, 569].) As aptly stated in the *Vogel* case (124 N.Y.S.2d, at 569): ''The greatly expanded interest in skiing in recent years is known to all. Practically every population area in the snow belt has its own resorts, be they

---

*Formerly Rules on Appeal, rule 4(b).

publicly or privately owned. Thousands take to the slopes every weekend in season. No more is heard the lament that it takes but two minutes to go down a hill that has taken twenty minutes to climb. The time for ascending and descending has been practically equalized by the installation of various devices to whisk the skiers up the slope, and, undoubtedly, there will be more complex devices to come. Some of these, such as the chair lift, have reached the stage where they physically carry the skier and, so to speak, isolate him from his own resources.'' Clearly, in the present case the rope tow did not physically carry the plaintiff. It was merely an aid furnished to the plaintiff to ease the burden of moving her body up the hill while her feet were in contact with the ground and her body remained under her own control. To use it she had merely to grip the rope with her hands. Unlike the case where one uses an elevator or an escalator in a business establishment, the plaintiff did not entrust the carriage of her person to the operator of the tow. The operation was not in the nature of that of a common carrier. There is no other basis for the imposition upon the defendant More of a duty to exercise the utmost care and diligence for the safety of the plaintiff. The rope tow was an integral part of the facilities made available to the plaintiff so that she might engage in the sport of skiing, its purpose being to facilitate her return to the top of the slope. There is no sound reason for differentiating the duty owed to her while she was so ascending from that applicable while she was skiing down the slope on a designated trail. (See *Wright* v. *Mt. Mansfield Lift*, 96 F.Supp. 786; comment, 1 Washburn L.J. 316.) There was no error in the instructions given as to the nature of the duty of the defendant More. (See *Davidson* v. *Long Beach Pleasure Pier Co.*, 99 Cal.App.2d 384, 387 [221 P.2d 1005]; *Anderson* v. *Ocean Sport Fishing, Inc.*, 28 Cal.App.2d 712, 713 [83 P.2d 515]; 47 Cal.Jur.2d, Theaters, Shows, Exhibitions, and Public Resorts, §§ 16-17; 52 Am.Jur., Theaters, Shows, Exhibitions, and Public Resorts, § 72; 86 C.J.S., Theaters & Shows, § 41, p. 725.)

The plaintiff asserts that the trial judge agreed to give instructions as to the duty imposed upon a common carrier and that in making his opening argument to the jury her attorney placed reliance upon the assumption that the jury would be so instructed and, accordingly, argued the matter of the liability of the defendant More as a common carrier. She argues that she was substantially prejudiced by the subsequent change of mind of the court. That contention, however,

may not be considered because the record does not contain either any discussion between the court and counsel upon the subject of instructions or the opening argument of plaintiff's counsel to the jury. (*Jones* v. *Evarts,* 114 Cal.App.2d 496, 499 [250 P.2d 671].)

 Another contention of the plaintiff is that photographs which showed an artificial barrier consisting of a picket fence between the rope tow and the ski run were placed in evidence by the defendant Dowell and that thereafter, pursuant to a motion made by the defendant, the photographs "were removed from evidence" over the plaintiff's objection. It is asserted that the photographs impeached Mr. Rinaldo's testimony that he had never seen artificial barriers employed for the protection of persons using the rope tow. The record before this court, exclusive of the notations on the photographs, shows only that on February 16, 1961, the pictures were marked as Exhibit B for identification only. Mr. McDaniel testified that he did not know when the pictures were taken. On the margin of each photograph was imprinted "Feb 60." The accident happened on February 9, 1958. There is nothing in either the reporter's transcript or the clerk's transcript as to any subsequent ruling of the court with respect to the five photographs so marked for identification except an assertion found in the affidavit of the plaintiff's attorney which was filed in support of the motion for a new trial. In that affidavit it is stated in part as follows: "That defendant Dowell admitted into evidence certain photographs of Rope Tow #2 *which included a change made after the occurrence, said change consisting of a certain fence or snow fence*; that plaintiff and defendant More did not object to the admission of said evidence and that said photographs were marked as exhibits. That after all parties rested and upon motion by defendant More said photographs, over the objection of plaintiff, were removed from evidence." (Emphasis added.) That affidavit cannot serve on this appeal as a substitute for a properly authenticated transcript of the proceedings in the court below. Without more, there is no support for the plaintiff's contention.

Examination has been made of the notations made by the clerk of the superior court on the back of the photographs, but such notations do not sustain the plaintiff's contention. They indicate that one of the pictures (not showing a barrier near the rope tow) was received in evidence as Exhibit B on February 21, 1961, and that the other photographs were respectively marked Exhibits B-1 to B-4 on that date. It is

true that Exhibit B-4 bears a cancelled notation indicating that it was received in evidence on February 21, 1961, but this court cannot indulge in speculation as to the reason why such notation was made and thereafter cancelled. ▮ It is incumbent upon an appellant to make it affirmatively appear that error was committed by the trial court; an appellate court cannot presume error. (*Bird* v. *Bird,* 180 Cal.App.2d 188, 192 [4 Cal.Rptr. 290].) The record does not disclose that the witness Rinaldo was shown the photographs or questioned about them. In any event, it does not appear how they could effectively have discredited his testimony that he had never seen such artificial barriers used, since there is no showing when and for what length of time any such barriers were in place.

The plaintiff states that in his opening statement counsel for the defendant Dowell stressed the fact that the plaintiff's husband was an attorney and that such comment "could only have been made to prejudice the jury in favor of his client by attempting to show a plaintiff with a wealthy husband suing a minor." Since the opening statement is not contained in the record on appeal, the logic of such contention need not be considered.

▮ It is also asserted that inquiry in the course of cross-examination of the plaintiff as to her husband being the attorney of record when the action was filed and when the deposition of the defendant Dowell was taken could have had no purpose except to prejudice the jury against the plaintiff. But such contention is without merit. The first witness called on behalf of the plaintiff was her husband and the first questions asked of him were directed to establishing that he was a practicing attorney in San Fernando Valley. Moreover, the record shows that the inquiry on cross-examination of the plaintiff was directed to the ascertainment of whether she had conferred with her husband, acting as her attorney, prior to the taking of her deposition, as to her physical movements at the time of the accident. She was thereafter questioned with respect to testimony given by her in her deposition. No objection was made to such inquiries at the trial; none can be made for the first time on this appeal. (*Nizuk* v. *Gorges,* 180 Cal. App.2d 699, 709 [4 Cal.Rptr. 565].)

▮ The plaintiff asserts that on cross-examination she was asked questions by counsel for the defendant Dowell which were designed to place before the jury the fact that all or a major portion of her medical bills were paid by

someone other than the plaintiff so as to give rise to the inference that those expenses were covered by insurance in her favor. In response, the defendant Dowell calls attention to the following testimony given during the direct examination of Mrs. McDaniel: *"To the best of your knowledge,* Mrs. McDaniel, have these bills been paid? A. Yes." (Emphasis added.) It is asserted that the plaintiff thereby subjected herself to cross-examination on the subject of payment. But if a proper foundation had not been established on direct examination for the introduction of the evidence, the appropriate objection as to admissibility could then have been made (see *Latky* v. *Wolfe,* 85 Cal.App. 332, 346-347 [259 P. 470]), without the necessity of cross-examination of the nature revealed by the record. If counsel's purpose was to bring to the attention of the jury that Mrs. McDaniel's medical expenses had been paid by virtue of insurance in her favor, his inquiry was improper and cannot be condoned. (*Loggie* v. *Interstate Transit Co.,* 108 Cal.App. 165, 168-169 [291 P. 618]; see *Peri* v. *Los Angeles Junction Ry. Co.,* 22 Cal.2d 111, 131 [137 P.2d 441].) However, there was no actual mention of insurance with respect to the matter of medical expenses. An appellate court is handicapped in weighing the effect of conduct asserted to have been prejudicial where there is only a partial transcript of the evidence that must be considered in reaching a proper determination. ▮ As said in *Alcorn* v. *Davies,* 173 Cal.App.2d 569 [343 P.2d 621], at page 575: "The test to be applied in determining whether or not there has been a 'miscarriage of justice' is stated in *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]:' . . . A "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " In the present case it cannot be said that a miscarriage of justice occurred.

▮ Of less merit is the plaintiff's contention that counsel for the defendant Dowell "asked repeated questions of the plaintiff to place before the jury the fact that the plaintiff received disability compensation during the time that she was disabled." The defendant Dowell's response is that the cross-examination concerned "the remarkable coincidence in timing between her return to health (sufficient that she inquired of her doctor whether she could return to work) and

the termination of her disability payments.'' Since the inquiry appears to have been pertinent to the issue of the extent of the plaintiff's actual period of disability, there is an insufficient basis for the assertion of error. (See *Curcic* v. *Nelson Display Co.*, 19 Cal.App.2d 46, 57 [64 P.2d 1153].)

 The plaintiff contends that defense counsel, in his argument to the jury, ''stated directly and by insinuations that the plaintiff did not suffer the damages, hospital and doctor bills, and loss of wages that were claimed, because these or a portion of them, were paid by third persons or insurance companies.'' But this court cannot consider such contention since the record on appeal does not include the arguments made to the jury.

Error is asserted with respect to the admission, over the objection of the plaintiff, of certain testimony of an expert witness, Ben Rinaldo, the head of the ski patrol at Table Mountain. The plaintiff makes reference to that evidence as being ''that the defendant More had layed [sic] out the rope tow No. 2 and the adjacent ski run in a safe and proper manner,'' and argues that thereby the province of the jury was usurped. That the witness was, in effect, expressing an opinion as to the safety of the conditions existing at the place where the accident occurred is apparent from the following answer: ''Well, I never found anything unsafe about the location of the rope, so I never made any comments concerning it.'' In *Towt* v. *Pope,* 168 Cal.App.2d 520 [336 P. 2d 276], the court said at page 535: ''An expert cannot, as a general rule, be questioned as to whether certain methods are prudent, or machinery or conditions safe, as invading the province of the trier of fact. [Citations.]'' (See also *Wilkerson* v. *City of El Monte,* 17 Cal.App.2d 615, 621-623 [62 P.2d 790]; Note 62 A.L.R.2d 1426.) Assuming that the rulings of the trial court were incorrect, no prejudicial error is evident in view of the witness' further testimony while under cross-examination by the plaintiff's attorney. He testified in part as follows: ''Skiing is a sport which is as safe as the individual who engages in it. . . . if you are not careful, it is unsafe.'' He further testified that most skiers ''[c]ome down the hill from this direction, . . . make a turn here, another turn here, level out, *sweep around the post and get in line to go up the rope again.*'' (Emphasis added.) Mr. Rinaldo further said that while he would assume that beginners probably have more trouble making turns than intermediate or expert skiers, ''depending on conditions, everybody can have trouble on occasions.'' Persons who fail to com-

plete a turn may fall down or continue to ski out of control. The witness had seen persons ski out of control as they were making or about to make a turn in the area, but had not seen anyone ski into the rope area. In view of the witness' description of the locale and the use made thereof by the skiers, and in the light of photographs received in evidence, the jurors were placed in a position to determine for themselves the nature of the area involved and the conditions there existing at the time of the accident. Under such circumstances, any error with respect to the admissibility of opinions expressed by Mr. Rinaldo did not result in a miscarriage of justice. (See *Baccus* v. *Kroger,* 120 Cal.App.2d 802, 804 [262 P.2d 349].)

The plaintiff states that Exhibit C, the form of ticket sold to users of the rope tow, should not have been received in evidence because the printed limitation of liability thereon was prejudicial to the plaintiff's case. No statement of any objection was made when the ticket was offered in evidence. The only objection thereafter expressed by the plaintiff with respect to the exhibit was not as to its admissibility but was that it was improper for counsel for the defendant More to read the wording on the ticket to the jury, the attorney for the plaintiff stating that ''the ticket speaks for itself.'' An objection to the admission of evidence cannot be considered when it is made for the first time on appeal. (*Nizuk* v. *Gorges, supra,* 180 Cal.App.2d 699, 709.)

Without citation of authority, the plaintiff asserts that it was error to instruct the jury upon the doctrine of assumption of risk. But it was clear from the evidence that one of the risks normally incident to the use of the skiing facilities was the danger arising from the movements of a skier who has lost control of his bodily actions. There was no error. (See *Mann* v. *Nutrilite, Inc.,* 136 Cal.App.2d 729, 734 [289 P.2d 282]; *Brown* v. *San Francisco Ball Club, Inc.,* 99 Cal. App.2d 484, 487 [222 P.2d 19]; *Thomas* v. *Studio Amusements, Inc.,* 50 Cal.App.2d 538, 543 [123 P.2d 552]; *Chardon* v. *Alameda Park Co.,* 1 Cal.App.2d 18, 21 [36 P.2d 136].)

Finally, the plaintiff contends that the cumulative effect of errors occurring in the course of the trial was such as to require a reversal. In the light of the discussion hereinabove, the contention is untenable.

The attempted appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.