**David J. DILLWORTH; Dorothy Dillworth, Plaintiffs–Appellants,**

**v.**

**Andrew GAMBARDELLA, Defendant–Appellee.**

**No. 940, Docket 91–9112.**

United States Court of Appeals, Second Circuit.

Argued Feb. 6, 1992.

Decided July 27, 1992.

---

Thomas M. French, Brattleboro, Vt., for appellants.

Douglas Richards, Springfield, Vt. (Sheilla C. Files, Springfield, Vt., of counsel), for appellee.

Before: OAKES, Chief Judge,* CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

On a bright, clear Saturday morning in February near the foot of the Black Bear Trail at Stratton Mountain, Vermont, two skiers collided. Most participants in that winter sport have experienced or witnessed such traumatic incidents, which at the very least shock and leave one shaken, and often cause injury. Sometimes, as here, where the injuries are serious, litigation results. Such is the case here where David J. Dillworth and his wife, Dorothy Dillworth, brought the instant diversity negligence action against Andrew Gambardella for damages arising out of a skiing accident in which Dillworth suffered permanent injuries. After a five day trial in the United States District Court for the District of Vermont before Franklin S. Billings, Jr., Chief Judge, a jury returned a verdict for the defendant. From this judgment in favor of defendant, plaintiffs appeal. 776 F.Supp. 170.

The principal issues raised on appeal are (1) whether the Vermont Sports Injury Statute, Vt.Stat.Ann. tit. 12, § 1037 (1991), that provides for the assumption of certain risks by participants applies in a negligence action brought by one skier against another for a collision between them, and (2) whether collisions between skiers require as a matter of law a finding of negligence on the part of at least one skier. An underlying issue is the vexing phrase "assumption of the risk." Beginning as a literary phrase, repeated often, it became

---

* After oral argument but before the decision was ordered, Chief Judge Oakes stepped down from his position to become a Senior Circuit Judge of the United States Court of Appeals for the Second Circuit.

established as a legal formula that bedevils the law because it is often used to express different and even contradictory notions. *See Tiller v. Atlantic Coast R.R.*, 318 U.S. 54, 68, 63 S.Ct. 444, 87 L.Ed. 610 (1943) (Frankfurter, J., concurring). We think the courts of Vermont have taken a common sense path through this legal maze, producing results that are reconcilable with Vermont's legislative purpose, and hence affirm.

## BACKGROUND

Dillworth's injury occurred at Stratton Mountain on February 11, 1989 when he and skier Gambardella collided. Dillworth suffered a broken leg and was unable to work for a year, causing the loss of his business and its income. In addition to his physical injuries, plaintiff was hospitalized for depression for six weeks in a psychiatric facility. Dorothy Dillworth joined the action against Gambardella alleging a loss of consortium. The total damages sought exceed $115,000.

The parties' testimony, and the testimony of at least one family member who witnessed the accident, presented dramatically different versions of what happened. All agree that the collision occurred at the bottom of the Black Bear intermediate ski slope near the collection area, where skiers congregate in a line before boarding the Grizzly chair lift. Two orange snow fences that funnel skiers into a corral-like maze and at least one posted sign that warns them to proceed slowly were in place at the scene. Given fine weather, good skiing conditions, and that it was 10:30 a.m. on a Saturday in February, many skiers were present.

Dillworth, a better than intermediate skier, first began skiing in 1949 and, after a lay-off of 20 years, skied regularly for 15 years prior to a 1984 automobile accident. He had other connections with the sport, having managed a small ski area for a year in New Hartford, Connecticut and working for six years as a member of the Ski Patrol and also serving on a courtesy patrol charged with enforcing safe ski conduct. He stated that at the time of the accident he was moving at a slow rate of speed near the collection area, practicing ski patrol techniques. Upon observing a skier to his left coming towards him out of control and at a fast rate of speed, he attempted to turn out of the approaching skier's way. The other skier—defendant Gambardella—fell, according to plaintiff, and. lost a ski that shot at a right angle across the snow into his path making him stop abruptly and catapulting him four to seven feet forward through the air. Gambardella, an advanced or expert skier, tells a completely different tale. He says he was traveling slowly towards the collection area when he first saw the plaintiff, slightly behind him, suddenly turn in his direction and run into him. He said the impact caused each of them to fall and lose a ski.

In response to plaintiffs' complaint alleging Gambardella's negligence, defendant denied those allegations and asserted, as alternative affirmative defenses, that those who participate in skiing are deemed as a matter of Vermont law to accept collisions of the type that occurred as an obvious danger inherent in the sport and that, under the Vermont comparative negligence statute, the plaintiff's negligence exceeded any negligence by defendant, thereby absolving the latter of liability.

Overruling plaintiff's objections, the district court referred to § 1037 of the Vermont Sports Injury Statute in its instructions to the jury:

Under Vermont law there is a provision that a person who takes part in any sport, including skiing, accepts, as a matter of law, the inherent dangers of the sport, insofar as those dangers are obvious and necessary to the participant. And thus you must, first, determine in this case whether the accident that occurred between the skiers who were engaged in the sport is obvious and necessary as a part of skiing. If you find it is, then your verdict must be for the defendant. If you find that it isn't, then you must pass on to the other issues in this case.

The trial court further instructed on the law of negligence and comparative negli-

gence and, on the question of defendant's alleged negligence, gave a standard charge covering a skier's duty of ordinary care, maintaining control of his movements, and taking proper precautions in view of the risks. A series of special interrogatories was distributed to the jury. The first asked whether the defendant was negligent and whether the negligence was a proximate cause of the plaintiff's injuries. The jury was told to answer the interrogatory in the negative if the defendant was not negligent, or if his negligence was not the proximate cause of the accident, and also if the jury found that this collision was inherent in the risks of skiing. The remaining interrogatories covered the plaintiff's negligence, the percentage comparison between the negligence of both parties, and damages. After deliberating for three and one half hours, the jury returned a verdict in favor of the defendant, answering "no" to the first interrogatory.

Plaintiffs moved for a new trial asserting: (1) the sports injury statute applies only in actions against ski area operators, (2) the jury instruction on primary assumption of the risk undermines Vermont's general comparative negligence statute, and (3) the jury's verdict was not supported by the weight of the evidence. In denying plaintiffs' motion for a new trial, the trial court ruled that § 1037 permitted an instruction to the jury on the common law doctrine of primary assumption of risk, as applied in *Wright v. Mt. Mansfield Lift, Inc.*, 96 F.Supp. 786 (D.Vt.1951) and *Leopold v. Okemo Mountain, Inc.*, 420 F.Supp. 781 (D.Vt.1976). It decided the statute applied to collisions between skiers, and so long as the risk of such a collision is an obvious, necessary and inherent part of the sport, it shields the defendant from owing any duty to plaintiff. Whether a risk had been assumed by plaintiff, the trial court stated, was a question for the jury.

## DISCUSSION

Plaintiffs' argument is twofold. First, they contend the Vermont Sports Injury Statute extends only to suits against ski area operators. Next they assert that,

even if § 1037 is applicable to a suit against an individual skier, in this case, a primary assumption of risk defense (embodied in a § 1037 charge) is unavailable because collisions between skiers must involve negligence on the part of one party and, because the doctrine of secondary assumption of risk (contributory negligence) has been abolished in Vermont due to the adoption of comparative negligence, the jury instruction was in error.

### I

#### A.

Analysis begins with the language of the statute. Section 1037, the Vermont Sports Injury Statute, titled "Acceptance of inherent risks" provides: "Notwithstanding the provisions of section 1036 [comparative negligence], a person who takes part in any sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary." That § 1037 extends to personal injuries arising from participation "in any sport," without regard to Vermont's comparative negligence statute, Vt.Stat.Ann. tit. 12, § 1036 (1991), and without limitation as to the identity of the defendant, seems clear. But plaintiffs persist, and we are without the aid of any Vermont state court decision elucidating the subject, that the scope of § 1037 is not so broad as a literal reading of its language might suggest.

In examining its history, we note that § 1037 was the second section of Pub.L. No. 119, which was passed during the 1977 Adjourned Session of the Vermont Legislature and enacted on February 7, 1978. In its first section is set forth a statement of legislative purpose:

Since 1951, the law relating to liability of operators of ski areas in connection with downhill skiing injuries has been perceived to be governed by the doctrine of volenti non fit injuria as set forth in the case of *Wright v. Mt. Mansfield Lift, Inc.*, 96 F.Supp. 786, decided by the United States District Court for Vermont. In 1976, in the case of *Leopold v. Okemo Mountain, Inc.*, 420 F.Supp. 781, decided

also by the United States District Court for Vermont, the doctrine of assumption of risk was held to be applicable in a downhill skiing injury case, despite the adoption of a comparative negligence statute by the Vermont General Assembly in 1970. In 1977, in the case of *Sunday v. Stratton Corporation*, the Superior Court for Chittenden County of the state of Vermont ruled that the defense of assumption of risk was inappropriate in a comparative negligence case involving a downhill skiing injury.

It is a purpose of this act to state the policy of this state which governs the liability of operators of ski areas with respect to skiing injury cases, including those resulting from both alpine and nordic skiing, by affirming the principles of law set forth in *Wright v. Mt. Mansfield Lift, Inc.*, and *Leopold v. Okemo Mountain, Inc.*, which established that there are inherent dangers to be accepted by skiers as a matter of law.

1977 Vermont Pub.L. No. 119. In order to better understand the circumstances leading to § 1037's enactment, we review the *Wright, Leopold,* and *Sunday* decisions.

### B.

In *Wright v. Mt. Mansfield Lift, Inc.* 96 F.Supp. 786 (D.Vt.1951), while skiing down a trail the plaintiff hit a stump concealed under the snow and broke her leg. The trial court held the doctrine of *volenti non fit injuria* (one who consents cannot claim injury) applied, stating "[o]ne who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary." *Id.* at 791. In directing a verdict for the defendants, it held no duty existed beyond advising skiers of dangers—unlike a concealed tree stump—that reasonable prudence on the part of defendant could have foreseen and corrected. *Id.* at 790–91.

Despite the intervening passage of Vermont's comparative negligence statute *Leopold v. Okemo Mountain, Inc.*, 420 F.Supp. 781 (D.Vt.1976), held the same principles of law relied upon in Wright governed an action brought on behalf of a skier who was killed when he collided with a ski lift tower. In light of plaintiff's familiarity with defendant's trail, the hazard created by an unpadded and exposed ski lift tower was an obvious and necessary danger which the plaintiff knew of, appreciated, and voluntarily assumed. Noting the case could be disposed on those grounds alone, the district court commented that even were the assumption of risk doctrine inapplicable, the failure of the plaintiff to exercise reasonable prudence for his own safety in descending the slope possibly outweighed any negligence on the part of the defendant and could thus preclude plaintiff from recovering under Vermont's comparative negligence statute. *Id.* at 787.

In *Sunday v. Stratton Corp.* a jury returned a one and a half million dollar verdict in favor of plaintiff for severe injuries sustained when he fell after becoming entangled in concealed brush on a novice trail at defendant's ski area. Denying defendant's motion for a directed verdict under the assumption of the risk rule, the trial court ruled that whether the concealed brush was an assumed risk was a disputed question of fact reserved for the jury. Given that opportunity, the jury determined that the risk was not assumed and that defendant's negligence was the sole cause of plaintiff's injuries.

Before the Vermont Supreme Court could pass on defendant's appeal, the legislature enacted § 1037. According to testimony at hearings held before the State Senate Judiciary Committee in contemplation of H. 417—the bill that eventually became § 1037—the drafters believed *Sunday* marked a change in Vermont law, the effect of which would be to subject ski area operators to a significant and undetermined increase in potential liability. Following the 1977 trial court result in *Sunday*, the two primary ski area insurers threatened to withdraw from Vermont during 1978, effectively putting in jeopardy one of the state's major industries. A groundswell built-up to restore the law protecting ski area operators to that which existed prior to the holding in *Sunday*. *See, e.g., Vermont Sports Injury Statute:*

*Hearings on H. 417 Before Senate Judiciary Committee*, 1978 Adj. Sess. (hereafter *Senate Hearings*) (statement of Mr. Deslauriere, 1/10/78, at 9, 25) (statement of Mr. Paul, 1/17/78, at 4, 7) (statement of Mr. Collier, 1/17/78, at 8). In response to these concerns the General Assembly acted swiftly and the Governor signed § 1037 into law, effective immediately on February 7, 1978.

The *Sunday* case reached Vermont's highest court later that year and in an opinion handed down on June 6, 1978 the Vermont Supreme Court declined comment on the new Sports Injury Statute. See *Sunday v. Stratton Corp.*, 136 Vt. 293, 390 A.2d 398 (1978). It decided the defendant's motion for directed verdict was properly denied. Although it acknowledged the widely accepted assumption of risk rule of *Wright*, the Court recognized that finding plaintiff assumed certain inherent dangers of a sport is equivalent to finding that defendant did not breach any duty owed plaintiff. See 390 A.2d at 402. In cases where primary assumption of risk applies, defendant is not negligent, either because, as in *Wright*, no duty is owed or because, as in *Leopold*, plaintiff consents to relieve defendant of the duty. Vermont's Supreme Court thus reasoned that no "conflict between a comparative negligence statute and the defense of primary assumption of risk as an absolute bar to recovery" exists because where there is no negligence by defendant to begin with plaintiff cannot recover in any event. "But where the evidence indicates existence or assumption of duty and its breach [*i.e.*, the danger is not obvious, necessary and inherent], that risk is not one 'assumed' by the plaintiff. What [plaintiff] 'assumes' is not the risk of [such] injury, but the use of reasonable care on the part of the defendant." *Id.* at 403. Given changes in the methods and technologies used to maintain ski trails, increased efforts to attract new skiers, and an increase in the portion of trails dedicated to novice skiers, the Vermont court refused to decide whether defendant owed a duty *as a matter of law*. Instead, it thought the question of whether the danger was obvious, necessary, and inherent was one properly determined by a jury.

The defendant in *Sunday* also argued on appeal—in spite of no requirement to instruct the jury on primary assumption of risk—that the trial court's charge did not adequately apprise the jury of secondary assumption of risk as an aspect of the plaintiff's negligence. Vermont's highest court held secondary assumption of risk, requiring one with knowledge and appreciation of a particular danger caused by the negligence of another to consent to assume it, *id.* at 404 (citing *Garafano v. Neshobe Beach Club, Inc.*, 126 Vt. 566, 238 A.2d 70, 76 (1967); *Killary v. Burlington–Lake Champlain Chamber of Commerce, Inc.*, 123 Vt. 256, 186 A.2d 170, 174 (1962)), "is logically only a phase of contributory negligence and ... use of assumption of risk language is irrelevant and confusing in a jury instruction on comparative negligence." *Id.* It found insufficient evidence to support a charge on comparative negligence. The plaintiff's jury award was affirmed.

### C.

Given the "obscure and complicated" nature of the doctrine of assumption of risk, *Gover v. Central Vt. Ry.*, 96 Vt. 208, 214 (1922), and the distinctly different legal theories to which it simultaneously refers, see, e.g., F. Harper, F. James & O. Gray, 4 The Law of Torts § 21.0, at 187–89 (2d ed. 1986); Restatement (Second) of Torts § 496A cmt. c (1965), it will be helpful to analyze § 1037's effect on that doctrine under Vermont law.

■ We analyze first the consequences of *Sunday*. The Vermont Supreme Court did not reject *Wright*'s rule that sports participants accept the risks of inherent dangers obvious and necessary to participation in the sport. Instead, in concluding that an instruction regarding primary assumption of risk was properly denied, it pointed out that primary assumption of risk "is *the equivalent of*, and better put as, a claim that defendant owed plaintiff no

duty with respect [to the particular] risk. 'In case of injury resulting from such a risk, [one] is denied a recovery, not because he has assumed the risk, but because the [defendant] has not been guilty of a breach of duty.' " *Sunday*, 390 A.2d at 402–03 (quoting *Carleton v. E. & T. Fairbanks & Co.*, 88 Vt. 537, 93 A. 462, 467 (1915), and citing *Springrose v. Willmore*, 292 Minn. 23, 192 N.W.2d 826, 827 (1971); *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90, 93 (1959)) (emphasis added).

Hence, the law in Vermont teaches that primary assumption of risk more properly should be framed in terms of the duty owed by a defendant. *Sunday* did not signal a substantive departure from *Wright;* it simply clothed the rule in different language without changing the duties imposed on defendants or the rights of sports participants to recover for injuries. *See Senate Hearings*, (statement of Sen. Bloomer 1/10/78, at 5). Hence, the only difference between *Wright* and *Sunday* is in their results, not in the principles of controlling law. In *Wright*, the defendant did not breach any duty it owed to plaintiff; in *Sunday*, it did. In both cases, though, the defendant's duty—to warn of or correct dangers which in the exercise of reasonable prudence in the circumstances could have been foreseen and corrected—was the same.

In *Wright* a concealed stump on an intermediate trail in 1949 was held, as a matter of law, to be an inherent danger necessary and obvious to the skiing participants. Or, phrased differently, the danger was not one which in the exercise of reasonable care the defendant could have foreseen and corrected. The same could not be said for concealed brush 25 years later on a novice slope in 1974 given the significant changes in the ski industry and its widespread promotion during the intervening years. *Sunday*, 390 A.2d at 402. Although this point might be characterized as the most significant effect of *Sunday*, it marked no new jurisprudential pronouncement. It has long been accepted that where reasonable minds could not differ about a material issue of fact, it may be adopted by the trial court, precluding the need for litigating it. This was the situation in *Wright*. But where there is doubt regarding an issue of fact a directed verdict is improper. This was the situation in *Sunday*. The results reached in *Wright* and *Sunday* are not inconsistent given their different factual circumstances.

There remains to be considered the impact occasioned by the passage of § 1037. Certainly the statute ensures that defendants in sports injury actions may request that a jury be charged using the language of the statute, rather than the substantively equivalent language regarding the duty of a defendant. And, if there was concern for any future erosion of the inherent danger rule under *Wright* or the no duty rule under *Sunday*, the legislature, as final arbiter of Vermont's public policy, assured its preservation in enacting § 1037. But, to reaffirm the rule in *Wright* when its equivalent was accepted in *Sunday* results in no net substantive change in Vermont law. *See* C.R. Manby, Note, *Assumption of Risk After Sunday v. Stratton Corporation: The Vermont Sports Injury Liability Statute and Injured Skiers*, 3 Vt.L.Rev. 129, 145 (1978).

■ Insofar as § 1037 was designed to "revive" the rule in *Wright*, however, it is difficult to discern how such a revival would have affected the outcome in *Sunday*. The testimony at the Senate Judiciary Committee Hearings suggests § 1037 was intended to keep cases from going to the jury and to restore to defendants the safety of directed verdicts enjoyed in *Wright*. *See, e.g., Senate Hearings* (statement of Mr. Scotch, 1/13/78, at 5, 6, 9); (statement of Mr. Paul, 1/17/78, at 4–5); (statement of Mr. Cleary, 1/25/78, at 6). To the extent that was the intent, it failed of accomplishment. To say that inherent risks are assumed by sports participants "as a matter of law" is of little solace to defendants when the question remains: what risks in a sport are inherent, obvious, or necessary to its participation, a question that ordinarily must be resolved by the jury. Absent specific inclusion in the statute as to the legislature's policy determina-

tion of which risks are "as a matter of law" inherent, obvious and necessary to participation in a sport, most cases cannot be resolved on a directed verdict motion. *Compare* Mich. Comp. Laws § 408.342(2) (1985); N.Y. Gen. Oblig. Law § 18–101(1) (McKinney 1989) *with* Okla.Stat. tit. 23, § 12 (1987). In the end, we conclude § 1037 reaffirmed the rule of *Wright,* the substantive equivalent of which was affirmed in *Sunday,* but assured that the language of the inherent danger rule would be given to Vermont juries in sports injury suits.[1]

## II

### A.

According to plaintiffs, the affirmative defense provided by § 1037 should be available only to operators of ski areas or other sports facilities. They say the statement of legislative purpose was specifically included in the Act to delineate those entities protected by the legislation: "It is a purpose of this act to state the policy of this state which governs the liability of operators of ski areas with respect to skiing injury cases ..." 1977 Vermont Pub.L. No. 119, sec. 1. Thus, the jury should not have been given an "inherent danger" instruction.

Normally resort to the legislative history of a statute is necessary only when its language is ambiguous. Where the legislature's purpose is plain from the words found in the statute, the statute must be enforced "according to its terms." *Quero v. Vermont State Tax Dep't,* 131 Vt. 326, 306 A.2d 684, 686 (1973). Although the unambiguous nature of § 1037's language arguably precludes any resort to its history, the unique circumstance presented—a statement of purpose set forth in the text of the Act—raises a question regarding its compass.

Review of the Senate Judiciary Committee Hearings indicates the legisla-

ture by enacting § 1037 sought to appease insurance industry concerns. The developments surrounding its passage prompted the legislature to describe its motivation in enacting § 1037. Section 1 describes what the General Assembly intended § 1037 to accomplish. Section 2 is the language utilized to effectuate that intent. That section 2 may be broader than section 1 does not mean there is a *conflict* between the law and the legislature's purpose because section 1 cannot be fairly understood as signalling that the legislature specifically *did not intend* other than operators of ski areas or sports facilities be entitled to an "inherent danger" charge. To construe references to ski area liability as a limitation on the Act's scope unnecessarily reads into section 2 words not clearly intended.

The statutory language contains no limitations. It is worded to place focus upon plaintiffs and the risks they assume without restrictions as to the identity of eligible defendants. To read the Act as having been aimed only to apply to ski area operators runs counter to the language that refers to "any sport." The statement of intent explains that "a purpose" (not "*the* purpose") of the Act is to express policy regarding ski area operators. In fact, the chairman of the Senate Judiciary Committee, Senator Bloomer, specifically noted "what we have been talking about ... is having [§ 1037] apply only to sporting events, football, basketball, skiing, what have you, as distinguished from the general tort law of comparative negligence. Automobile accidents, landlord and tenants, slip and fall." *Senate Hearings,* (1/17/78, at 4). It is significant that no discussion restricting the Act's application to sports facility owners is found in the legislative history.

The adoption of language that makes no reference to skiing, but refers instead to "any sport," suggests the General Assembly planned for § 1037 to extend to others beyond ski area operators. To give effect

---

1. We realize that rephrasing the issue from assumption of inherent dangers to the duties owed by defendant changes the burdens of pleading and proof. Plaintiff has the burden to show breach of duty by the defendant. Defendant must plead and prove assumption of risk as an affirmative defense. *See Sunday,* 390 A.2d at 400; W. Prosser, *supra,* at 454–55.

to the plain meaning of § 1037 by construing it to apply to any defendant sued in a sports injury action does no violence to the legislature's substantive purpose of restoring the doctrine of assumption of risk as applied in *Wright* and *Leopold*, nor does it dilute or defeat the practical effect intended by the legislature of preserving the vitality of the ski industry in Vermont. Hence, doing so does not *conflict* with the statement of intent set forth in section 1. *See Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 527 A.2d 227, 228 (1986) (application according to the plain language preferred when possible, yet letter of a statute or its literal sense yields where it conflicts with legislative purpose).

One final comment on this subject. Plaintiffs submitted to the trial court an affidavit of a Senate Judiciary Committee member who participated in drafting § 1037 in 1977–78. He avers that § 1037, in affirming the doctrine of primary assumption of risk, was intended for the benefit of ski area operators and the General Assembly did not aim to alter the relationship among downhill skiers. We cannot give weight to what a legislator says was an Act's purpose 13 years after the fact. The only proof of the legislative scheme *at the time of the Act's enactment* is evidenced by its language and statements made during hearings.

### B.

Plaintiffs next contend that even if § 1037 is not limited to suits against ski area or sports facility operators, an "inherent danger" instruction should not have been given in this case. Their argument is that because 1) a collision between skiers must involve negligence on the part of at least one skier, such a collision cannot be an inherent, obvious and necessary danger of participating in the sport (*i.e.*, as a matter of law, primary assumption of risk does not apply), and 2) § 1037 does not apply to secondary assumption of risk, therefore 3) a jury charge using the language of § 1037 was in error. We disagree with plaintiffs' major premise.

Absent legislative direction to the contrary, the question of what dangers inhere in a sport is generally for a jury. And though a danger against which a reasonably prudent defendant under the circumstances could have guarded is not obvious, inherent and necessary, whether the risk should have been guarded against is also generally a question for the jury. Vermont courts in applying § 1037 have recognized as much. Thus the jury in *Peterson v. Chichester*, No. S56–88–WrC (Windsor Superior Court) (Vt.1989), a case involving a collision between two skiers, was instructed that:

necessary dangers are those that are there *even when* due care is exercised. A person need accept only those risks that are inherent in the sport, not those increased risks that are cause[d] by another's failure to use due care.

(emphasis in original). In reaching a verdict for plaintiff it found defendant 51 percent at fault in causing plaintiff's damages. The Vermont Supreme Court affirmed. *See Peterson v. Chichester*, 600 A.2d 1326 (Vt.1991). No issue was raised on appeal as to the applicability of § 1037 or the propriety of apportioning damages based on comparative fault. *Cf. North v. Pico Peak Ski Resort, Inc.*, No. 80–49 (D.Vt. July 17, 1981) (in an action against a ski area, jury instructed that collisions between skiers could be obvious, necessary and inherent risks of the sport); *Pitasi v. Stratton Corp.*, 968 F.2d 1558 (2d Cir.1992) (if disclaimer on skipass merely restated § 1037, negligence by defendant ski area would not bar recovery by plaintiff). It was therefore proper to send to the instant jury the issue of primary assumption of risk. Moreover, it cannot be said that the jury's conclusion that primary assumption of risk applied in this case was erroneous as a matter of law.

Collisions between skiers are not always and inevitably the product of at least one party's failure to use reasonable care. Unlike the proverbial barrel of flour that fell from a warehouse window ledge, *Byrne v. Boadle*, 159 Eng.Rep. 299 (1863), a presumption of negligence is not justified in every accidental encounter on a ski

slope. *See* W. Prosser, The Law of Torts § 39, at 213-16 (4th ed. 1971). Instead, the trial court correctly noted a jury might conclude that some collisions between skiers may be as a result of the obvious and necessary risks inherent in skiing, and accidents might occur despite the exercise of ordinary and reasonable care and without negligence by either skier.

The law is clear. "[T]he standard of conduct needed to discharge a duty of care in any given situation [is] measured in terms of the avoidance of reasonably foreseeable risks to the person to whom such duty is owed." *Green v. Sherburne Corp.*, 137 Vt. 310, 403 A.2d 278, 280 (1979). Like all others, skiers owe that degree of care an ordinary prudent person would exercise under like or similar circumstances. *See LaFaso v. LaFaso*, 126 Vt. 90, 223 A.2d 814, 817-18 (1966). One skier is not the insurer of another skier's safety nor, absent negligence, is one skier liable to another for inadvertent or accidental contact. *See, e.g., LaVine v. Clear Creek Skiing Corp.*, 557 F.2d 730, 734-35 (10th Cir.1977).

Thus, a jury might conclude that skiers who lose control even while exercising due care—that is, have breached no duty owed to other skiers—may pose a danger which is inherent, obvious and necessary to participants in the sport of skiing. *Sunday* applies as much to collisions with other skiers as it does to falls due to natural or man-made obstacles on the ski slope for which a ski area operator might be responsible: "If the fall is due to no breach of duty on the part of the defendant, its risk is assumed in the primary sense, and there can be no recovery." *Sunday*, 390 A.2d at 403. Where the facts on assumption and breach of duty are in dispute and more than one reasonable inference may be drawn from them, the question of negligence is for the jury. *See LaFaso*, 223 A.2d at 819.

What we hold here is not novel. Numerous authorities agree collisions between skiers may occur despite the exercise of due care by the parties. *See, e.g., Novak v. Virene*, 224 Ill.App.3d 317, 166 Ill.Dec. 620, 586 N.E.2d 578, 580 (1991) (though one does not voluntarily submit to bodily contact, and such is not inevitable, collisions remain a possibility in downhill skiing and should be governed by ordinary negligence standards), *appeal denied*, 144 Ill.2d 635, 169 Ill.Dec. 144, 591 N.E.2d 24 (1992); *Gray v. Houlton*, 671 P.2d 443, 444 (Colo. Ct.App.1983) (no negligence found on part of any party in action for injuries arising from ski collision); *LaVine*, 557 F.2d at 735 (jury determined collision between skiers resulted in absence of negligence by any party); *cf. McDaniel v. Dowell*, 210 Cal. App.2d 26, 26 Cal.Rptr. 140 (1962) (risks normally incident to skiing facilities included danger arising from skier who lost control). *See also Davis v. Erickson*, 345 P.2d 942, 943-44 (Cal.Dist.Ct.App.1959), *rev'd on other grounds*, 53 Cal.2d 860, 3 Cal. Rptr. 567, 350 P.2d 535 (1960); Mich.Comp. Laws § 408.342(2) (1985) ("Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from ... collisions ... with other skiers"); N.Y. Gen. Oblig. Law § 18-101(1) (McKinney 1989) ("The legislature finds ... that downhill skiing, like many other sports, contains inherent risks including ... the risks of personal injury ... which may be caused by ... other persons using the facilities"); T.C. Carbonneau, *The Liability for Injuries to Sports Participants and Spectators*, 2 Potomac L.Rev. 65, 88 & n. 80 (1979); *cf.* C. Lisman, *Ski Injury Liability*, 43 U.Colo.L.Rev. 307, 319 (1972).

Further, rulings regarding another winter sport are consistent analytically. Ice skating is sufficiently analogous by its nature and in the duties of participants towards one another, and it has been recognized that variations in skill and other factors create the possibility that even the most proficient skater might collide with another skater, despite exercising the utmost care. One court stated, the plaintiff "assumed risks that were inherent in the sport or amusement in which she was engaged, such as falls and collisions with other skaters brought about by her own or other skaters['] lack of skill or clumsiness. Such things are not extraordinary occurrences in skating rinks." *Schamel v. St.*

*Louis Arena Corp.,* 324 S.W.2d 375, 378 (Mo.Ct.App.1959). *Accord Moe v. Steenberg,* 275 Minn. 448, 147 N.W.2d 587, 589 (1966); *Humbyrd v. Spurlock,* 345 S.W.2d 499, 502 (Mo.Ct.App.1961).

In the instant case, whether the collision that occurred between the parties was an inherent danger obvious and necessary to participation in the sport of skiing is a question of fact properly submitted to the jury. Sufficient evidence was presented to support a finding that this collision was an inherent danger in the sport of skiing and that the plaintiff knew of, appreciated, and voluntarily accepted that danger. The record also contains ample proof to support its finding that defendant was exercising reasonable care and was not negligent.

In sum, as the only risks that plaintiff in this case could be said to have assumed are those which defendant in the exercise of reasonable care under the circumstances could have avoided, and because this question was for the jury to decide, it was not error for the trial court to instruct the jury to decide whether plaintiff had assumed the risks inherent in skiing before it considered defendant's negligence. The combining of primary assumption of risk with the defendant's negligence within that interrogatory is without consequence because the two are functionally equivalent. Moreover, it cannot be said the jury's finding of no negligence on the part of defendant must be set aside as a matter of law. Because there is nothing to suggest the verdict for defendant was based on a finding of negligence on the part of plaintiff, we need not consider whether § 1037 creates an exception to Vermont's comparative negligence statute by reviving secondary assumption of risk (contributory negligence) as a defense available in sports injury cases.

## CONCLUSION

Accordingly, the judgment is in all respects affirmed.