Rea v. Townsend, No. 261-4-09 Wrcv (Eaton, J., Oct. 28, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

SUPERIOR COURT                                    CIVIL DIVISION
Windsor County                                    Docket No. 261-4-09 Wrcv

William Rea, Jr.
        Plaintiff

v.

Ralph Townsend
        Defendant


## DECISION RE: MOTION FOR NEW TRIAL

This negligence action arose out of a turkey-hunting incident in which plaintiff William Rea was shot by defendant Ralph Townsend. A jury returned a verdict in favor of plaintiff. Defendant now moves for a new trial on the ground that the court erred by declining to instruct the jury that "a person who takes part in any sport, including hunting, accepts as a matter of law the inherent dangers of the sport, insofar as those dangers are obvious and necessary to the participant."

The language sought by defendant is adapted from the sports-injury statute, 12 V.S.A. § 1037. It is well established that the sports-injury statute was enacted in response to a trilogy of skiing cases, and that it codifies the doctrine of primary, as opposed to secondary, assumption of risk. Estate of Frant v. Haystack Group, Inc., 162 Vt. 11, 17 (1994); Sunday v. Stratton Corp., 136 Vt. 293, 301–02 (1978); Leopold v. Okemo Mountain, Inc., 420 F. Supp. 781, 787 (D. Vt. 1976); Wright v. Mt. Mansfield Lift, Inc., 96 F. Supp. 786, 791 (D. Vt. 1951). The question is whether the sports-injury statute applies under the circumstances of the present case.

The evidence at trial established that plaintiff was wearing camouflage at the time of the shooting. Defendant's argument is that plaintiff assumed all of the "obvious and necessary" risks of hunting while concealed, including the risk that he would not be visible to another hunter. However, this is not an argument for primary assumption of risk.

Primary assumption of risk is "the equivalent of, and better put as, a claim that defendant owed plaintiff no duty with respect to the particular risk." Dillworth v. Gambardella, 970 F.2d 1113, 1118–19 (2d Cir. 1992) (quoting Sunday, 136 Vt. at 301). An analysis of primary assumption of risk therefore does not ask whether the plaintiff appreciated the risk of injury but participated in the sport anyway—that is a claim of secondary assumption of risk—but rather whether the defendant owed plaintiff a duty under the circumstances presented. Estate of Frant, 162 Vt. at 20.

Here, the evidence at trial was that a hunter always has a general duty to maintain a proper lookout and to hunt in a safe manner. There was no evidence to support the suggestion that hunters are ever relieved of a duty of reasonable care when discharging their firearms.

Defendant's position is that not being visible to another hunter is an inherent risk of turkey hunting. But all hunters know that there are other people in the woods during hunting season, and that they must hunt safely in order to minimize the risk of an accident. The fact that some hunters may be difficult to see because of their clothing, or because of the density of the underbrush, or the flatness of the light, heightens, rather than diminishes, the importance of every hunter's adherence to the duty of care. The evidence at trial did not establish any reason why the behavior of one hunter should ever excuse another hunter from the obligation to hunt safely. As a result, the court cannot conclude that primary assumption of risk was an appropriate theory here. See Summers v. Tice, 199 P.2d 1, 2 (Cal. 1948) (holding that hunters "do not assume the risk of negligence on the part of their companions," and thus that plaintiff did not assume the risk of injury by walking ahead of the hunting line); see also Hendricks v. Broderick, 284 N.W.2d 209, 213 (Iowa 1979) ("Men go hunting every day, and no one reasonably anticipates that, as a result, one will negligently shoot the other.") (citation omitted); Shurley v. Hoskins, 271 So.2d 439, 443–44 (Miss. 1973) ("The maintenance of safe hunting practices demands that the duty of extraordinary care imposed on a hunter's discharging a firearm be not abrogated or diminished by the imposition of what is, under the circumstances presented in this case, an inaptly transplanted defense. In short, a member of a hunting party does not assume the risk that one of his fellow hunters will negligently discharge his firearm.").

Defendant's argument is better analyzed as an expression of secondary assumption of risk: that he did not breach any duty owed to plaintiff because plaintiff appreciated the risks of hunting while dressed in camouflage and assumed them anyway. But this is the same as contributory negligence, which is no longer an available defense in Vermont, 12 V.S.A. § 1036, and in any event Estate of Frant makes clear that the sports-injury statute does not protect secondary assumption of risk.

Moreover, even if the statute did apply, there was no evidence to support the conclusion that being shot is an obvious and necessary risk of hunting, meaning one that is unreasonably difficult to avoid. The testimony was rather to the contrary.

For these reasons, the court did not instruct the jury on the sports-injury statute; the evidence did not support the theory of primary assumption of risk. In reaching this conclusion, the court was aware of former Chief Justice Allen's concurring opinion in Estate of Frant, in which he explained that it is normally for the jury to decide whether a risk is "obvious and necessary" within the meaning of the statute. 162 Vt. at 21. This court's ruling, however, was that the statute did not apply to the theory presented by defendant, and thus that there was no issue under the statute for the jury to decide. And, as noted above, even if the statute did apply, there was no evidence to support the requested instruction.

2

It should be noted that defendant was not foreclosed from arguing his theories of the case to the jury. His main argument was that he exercised reasonable care before shooting but could not have seen plaintiff, because plaintiff made himself invisible. In response to this argument, the instructions stated in two separate places that the mere happening of an accident is not evidence of negligence, <u>Joly v. Coca-Cola Bottling Co. of Rutland</u>, 115 Vt. 174, 181 (1947), and that it is the plaintiff's burden to prove by a preponderance of the evidence that defendant's conduct fell below the standard of care. Defendant was free to argue that there was no breach.

Defendant's second argument was that plaintiff invited the harm by dressing in camouflage and making it impossible for other hunters to see him. In response to this argument, the court instructed the jury on comparative negligence, and provided a special verdict form on which the jury could mark whether they found plaintiff to be comparatively negligent, and if so by what percentage. Defendant was free to argue that there should be no recovery because plaintiffs' negligence was greater than his own, or that any recovery should be lessened by the amount of plaintiff's own negligence. The jury considered the issue and returned a verdict in plaintiff's favor.

For the foregoing reasons, the jury was instructed on all of the issues and theories that were supported by the evidence presented at trial. Accordingly, the motion for a new trial is denied.

## ORDER

Defendant's Motion for a New Trial (MPR #10), filed July 26, 2010, is ***denied***.

Dated at Chelsea, Vermont this 21st day of October, 2010.

_____
Hon. Harold E. Eaton, Jr.
Superior Court Judge